UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD and BUZZFEED, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) |
| Defendant. | ) ) ) |

Civil Action No. 19-3192 (RC)

## REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant United States Department of Justice ("DOJ"), Executive Office of United States Attorneys, by and through undersigned counsel, respectfully submits this reply brief in support of its motion for summary judgment ("Motion"), ECF No. 15, and opposition to Plaintiffs' cross-motion for summary judgment ("Cross-Motion"), ECF No. 17. The government's Motion explains in detail why the Monitor Report, which addresses anti-money laundering and sanctions compliance worldwide by HSBC Holdings plc ("HSBC") and remains under seal in *United States v. HSBC Bank USA, N.A.* ("*HSBC Bank*"), Crim. A. No. 12-763, is not subject to release under Freedom of Information Act ("FOIA") Exemptions 4, 6, 7(A), 7(C), 7(D), and 8.[1] Without any basis to challenge DOJ's withholdings, Plaintiffs "'yada-yada-yada'"[2] around those exemptions by raising baseless hearsay objections and ignoring the governing law. Plaintiffs go so far as to

---

[1]     Plaintiffs do not challenge the government's invocation of Exemptions 6 and 7(C). *See* ECF No. 17-1 at 10.

[2]     ECF No. 17-1 at 4 (quoting *Seinfeld: The Yada Yada* (NBC television broadcast Apr. 24, 1997)).

argue that the Monitor Report, which was provided to and used by the Board of Governors of the Federal Reserve Bank ("Federal Reserve"), is not a report prepared "on behalf of, or for the use of" that banking regulator. Plaintiffs also ignore the Second Circuit's reversal of Judge Gleeson's ruling. *See HSBC Bank*, 863 F.3d 125 (2d Cir. 2017), *rev'g* 2016 WL 347670 (E.D.N.Y. Jan. 28, 2016). Ultimately, Plaintiffs fail to create any genuine issue of material fact that precludes entry of summary judgment in the government's favor, and none of Plaintiffs' arguments supporting release of the Monitor Report are "spongeworthy."[3] For the reasons discussed below, the Court should deny Plaintiffs' Cross-Motion and grant the government's Motion.

I.      **The Government Proffered Admissible, Reliable Evidence**

Underscoring Plaintiffs' Cross-Motion is an unfounded assertion that the government's Motion must be denied because DOJ relies upon materials that, in Plaintiffs' view, constitute inadmissible hearsay. *See* ECF No. 17-1 at 1, 3-4, 7. Plaintiffs' hearsay objection is a red-herring and meritless.

First, none of the statements at issue are hearsay at all because they consist of objections by the various submitters. The objections are relevant because they exist, *i.e.*, the various submitters object for the reasons articulated. These statements are performative utterances, which only "commit the speaker to a course of action." *United States v. Montana*, 199 F.3d 947, 950 (7th Cir. 1999). Performative utterances fall outside the hearsay rule "because they do not make any truth claims." *Id.*; *see also Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1182 (7th Cir. 1994) (observing that performative utterances do not involve "making a statement that may be true or false"). As a result, Plaintiffs' expressed concern about hearsay is inapplicable.

---

[3]         *Seinfeld: The Sponge* (NBC television broadcast Dec. 7, 1995).

Second, even if the various submissions could somehow be construed as hearsay, the limitation on admissibility of hearsay evidence is subject to "numerous exceptions under circumstances supposed to furnish guarantees of trustworthiness." Fed. R. Evid. art. VIII (1972 committee notes). Most notable here, the Supreme Court has recognized that "if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement[.]" *Idaho v. Wright*, 497 U.S. 805, 820 (1990). The residual exception to the hearsay rule permits admission of a hearsay statement "even if the statement is not admissible under a hearsay exception in Rule 803 or 804" where:

(1)     the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2)     it is more probative on the point for which it is offered than any other evidenc that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a)(1)-(2).

Plaintiffs fail to identify any factor that calls into question the reliability and trustworthiness of the government's evidence. Plaintiffs have no basis to dispute the substance of any of these materials, including the July 14, 2020, letter from HSBC's counsel to DOJ, which articulates HSBC's various objections to disclosure of the Monitor Report. Again, the July 14, 2020, letter is nonhearsay and admissible because the letter's purpose (and reason for its existence) is to communicate HSBC's *position* about disclosure of the Monitor Report; *see* Ex. (Decl. Benjamin Naftalis ("Naftalis Decl.") ¶ 2 (explaining that the letter was submitted on behalf of HSBC to DOJ "in opposition to" Plaintiffs' FOIA request). Thus, the Court may accept the July 14, 2020, letter, because it, by definition, reflects HSBC's objections to disclosure of the Monitor Report. Nevertheless, to allay Plaintiffs' hearsay concerns, DOJ submits the attached declaration

3

from HSBC counsel Benjamin Naftalis, who confirms under penalty of perjury that the contents of the July 14, 2020, letter are accurate and correct. *See id.* (Naftalis Decl. ¶ 2).

The government's remaining evidence also presents no hearsay problem. These materials—DOJ's letter brief, ECF No. 15-8 (Decl. David A. Kessler ("Kessler Decl.") Ex. A at 1-14); affidavit of monitor Michael G. Cherkasky, *id.* (Kessler Decl. Ex. A at 15-17); and letters from (a) the Board of Governors of the Federal Reserve System ("Federal Reserve"), (b) the Financial Conduct Authority ("FCA"), (c) the Hong Kong Monetary Authority ("HKMA"), (d) Bank Negara Malaysia, *id.* (Kessler Decl. Ex. A at 15-33), and (e) HSBC's counsel, ECF No. 15-9 (Kessler Decl. Ex. B at 1-6)—were submitted on the public record to a federal district court in the *HSBC Bank* proceedings.[4]  Judge Gleeson considered the substance of these materials and, in fact, cited to or quoted from several of them in his ruling.  *See, e.g.*, 2016 WL 347670, at *2 (quoting the Cherkasky affidavit), *3 (quoting the DOJ letter brief), *6 (quoting from the HKMA letter and Cherkasky affidavit).  There is absolutely no reason to believe the various entities submitting letters were doing anything other than being truthful and accurate.  Judge Gleeson never questioned the admissibility or trustworthiness of these materials, all of which contain representations subject to Rule 11 requirements.  *See* Fed. R. Civ. P. 11(b)(3) (certifying for all submissions to the court that "the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery").  The totality of circumstances surrounding these materials, including submission to the district court as part of criminal proceedings and Judge Gleeson's reliance upon their substance to adjudicate issues presented in *HSBC Bank*, confirms that the government's exhibits and the

---

[4]      The Court may take judicial notice of all these filings.  *See* Fed. R. Evid. 201(b)(2); *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1213 (D.C. Cir. 2020).

statements contained in them are admissible: this evidence is "supported by sufficient guarantees of trustworthiness," Fed. R. Evid. 807(a)(1), and "more probative on the point for which [they are] offered than any other evidence" that can be obtained through reasonable efforts, Fed. R. Evid. 807(a)(2).

Plaintiffs do not articulate, nor can they identify, any reason to question the reliability and trustworthiness of the government's evidence. Consequently, Plaintiffs' generalized, inapt assertion of hearsay "stop[s] short."[5]

## II.    The Monitor Report Remains Under Seal and May Not Be Disclosed

Next, Plaintiffs focus on Judge Gleeson's decision in *HSBC Bank* as support for disclosure of the Monitor Report, *see* ECF No. 17-1 at 1-3, asserting that Judge Gleeson "rejected, or addressed through tailored redaction, the same basic secrecy arguments raised by the government under FOIA here," *id.* at 3. But the Second Circuit put the "kibosh"[6] on Plaintiff's argument by rejecting Judge Gleeson's reasoning and overturning the district court's unsealing order. *See HSBC Bank*, 863 F.3d at 125.

To determine whether a sealing order prohibits DOJ from disclosing records as long as the seal remains in effect, DOJ may refer to, among other things, the sealing order itself and extrinsic evidence "casting light on the factors that motivated the court to impose the seal." *Morgan v. Dep't of Justice*, 923 F.2d 195, 198 (D.C. Cir. 1991). Here, the Court need look no further than the Second Circuit's opinion, which confirmed that the Monitor Report must remain under seal and is not amenable to public disclosure: "By the terms of the [deferred prosecution agreement], the Monitor's reports *are intended to remain non-public*." *HSBC Bank*, 863 F.3d at 130 (emphasis

---

[5]    *Seinfeld: The Fusili Jerry* (NBC television broadcast Apr. 27, 1995).

[6]    *Seinfeld: The Opera* (NBC television broadcast Nov. 4, 1992).

added).  The Second Circuit's statement expresses the intended effect of the seal entered in *HSBC Bank*.

Contrary to Plaintiffs' assertion, the Second Circuit never stated that the seal "was not intended to have any impact on anyone's rights under FOIA."  ECF No. 17-1 at 4.  The Second Circuit observed, in footnoted *dictum* and as a general proposition, that FOIA is the "'appropriate device' for obtaining executive records."  *HSBC Bank*, 863 F.3d at 142 n.7 (quoting *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997)).  In other words, FOIA constitutes the *procedural* mechanism through which any request for records is presented to an executive agency.  The Second Circuit offered "no view on whether any of FOIA's exemptions would apply."  *Id.*  Nor did the appellate court foreclose DOJ from withholding a non-public record, maintained under seal, that it confirmed is not intended for public consumption.  *Id.* at 130.

A disclosure of information under FOIA constitutes a relase not only to the requester but to the public at large.  *See Michael v. Dep't of Justice*, Civ. A. No. 17-0197 (ABJ), 2018 WL 4637358, at *12 (D.D.C. Sept. 27, 2018).  The Second Circuit articulated and reaffirmed the clear intent and scope of the *HSBC Bank* seal.  And even if there exists any ambiguity in the Second Circuit's ruling, the Monitor Report *remains* under seal.  DOJ's compliance with the seal does not constitute an improper withholding under FOIA.  *See Awan v. Dep't of Justice*, 46 F. Supp. 3d 90, 92 (D.D.C. 2014).  Because the seal justifies DOJ's withholding of a non-public document independent of FOIA, DOJ properly asserted that it may not disclose the Monitor Report.

## III.    The Government Properly Invoked Exemption 4 to Withhold the Monitor Report

Plaintiffs concede that the government's evidence confirms that at least large portions of the Monitor Report are subject to withholding under Exemption 4.  *See* ECF No. 17-1 at 4 ("Plaintiffs will spot the government that those documents indicate that the report includes

information that HSBC customarily keeps private and that the government told HSBC that it would keep confidential."). The Court should take Plaintiffs at their word.

The Court should decline Plaintiffs' invitation to adopt Judge Gleeson's assertion that other portions of the report, including the Monitor's findings, could be addressed through redactions. ECF No. 18 at 5. The Second Circuit rejected that reasoning in unequovical terms, holding that the district court "erred in ordering [the Monitor Report] unsealed." 863 F.3d at 129. In particular, the Second Circuit explained that, under the HSBC deferred prosecution agreement, the full contents of the Monitor Report, not specific portions of Plaintiffs' own selection, "are intended to remain non-public." *HSBC Bank*, 863 F.3d at 130 (emphasis added); *see infra* n.13. Second Circuit precedent, while not binding, is nevertheless "'persuasive authority that should not be completely ignored.'" *Schnitzer v. Harvey*, 389 F.3d 200, 203 (D.C. Cir. 2004) (quoting *Kreuzer v. Am. Acad. Of Periodontology*, 735 F.2d 1479, 1490 n.17 (D.C. Cir. 1984)). Plaintiffs fail to explain why this Court should disregard the Second Circuit's ruling and embrace Judge Gleeson's erroneous, overturned analysis.

Moreover, Plaintiffs' argument ignores extensive evidence that there are not segregable portions of the Monitor Report. As an initial matter, the government's declaration explains that DOJ evaluated the Monitor Report and concluded there are no segregable portions. *See* ECF No. 15-3 at 10 (Decl. Vinay J. Jolly ("Jolly Decl.") ¶ 26 (stating that the Monitor Report "falls within one or more of the exemptions set forth above and are not segregable without revealing this protected information" and no meaningful portion of the Monitor Report "could be released without destroying the integrity of the document or without disclosing third-party privacy interests")). These declarations are entitled to a presumption of good faith, particularly with respect to segregability. *Competitive Enter. Inst. v. Dep't of Treasury*, 308 F. Supp. 3d 109, 120

(D.D.C. 2018).  Moreover, the other submissions attached to the government's Motion show that (1) the monitor's findings include analyses of confidential information, (2) those findings and other portions of the report are "inextricably intertwined with confidential information and other portions exempt from disclosure," and (3) "if redaction were allowed, foreign regulators and others who provided access to sensitive financial data would have little confidence that similar information provided in the future will remain private."  ECF No. 15-6 at 4; *accord* Naftalis Decl. Ex. A; *see also* ECF No. 15-8 at 19 (Kessler Decl. Ex. A ("[P]ublic disclosure of all *or any portion of the Monitor Report* would seriously impair . . . the Board's ability to carry out its responsibilities[.]")).[7]  In the face of this record, Plaintiffs' mere speculation about segregable portions of the Monitor Report is insufficient to rebut the presumption.  *Odland v. Fed. Energy Reg. Comm'n*, 34 F. Supp. 3d 3, 19 (D.D.C. 2014).

In short, Plaintiffs acknowledge that Exemption 4 does not authorize DOJ to release the Monitor Report, a document intended to remain non-public in its entirety.  Plaintiffs cannot overcome the government's credible evidence and declarations explaining why portions of this non-public document can be segregated and released.

## IV.    The Government Properly Invoked Exemption 7(A) to Withhold the Monitor Report

Next, Plaintiffs challenge DOJ's reliance upon Exemption 7(A) as an additional basis for withholding the Monitor Report in its entirety.  They ask the Court to (1) direct DOJ "to furnish

---

[7]    The evidence also shows that, even if a redacted version were possible to create without compromising the interests discussed, it would have no public value because it would be "incomprehensible."  *See* ECF No. 15-8 at 17 (Kessler Decl. Ex. A (Aff. Michael G. Cherkasky ("Cherkasky Aff.") ¶ 13 ("[A] redacted report might lack the factual support that gives it its critical context and meaning and might appear to be too conclusory to be persuasive, or even to be fully comprehensible.")); ECF No. 15-8 at 27 ("[I]f all sensitive factual information was redacted from the report we consider that context would be lost and that the report would most likely be incomprehensible in parts.")).

detailed affadavits *in camera*" and (2) disclose "some kind of summary to which Plaintiffs can respond." ECF No. 17-1 at 5. Plaintiffs articulate no basis for this request or its necessity.[8]

Plaintiffs do not dispute that the Monitor Report is a "record[] or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Their effort to challenge DOJ declarants' explanations of why disclosure of the Monitor Report "could reasonably be expected to interfere with enforcement proceedings," *id.* § 552(b)(7)(A), fails. EOUSA has provided more than sufficient information, without the need for *in camera* review, that permits the Court to conclude that disclosure of the Monitor Report would interfere with ongoing enforcement proceedings.[9] *Cf. supra* n.8. The Kessler Declaration states that a prosecution team conducting an ongoing criminal prosection in the Eastern District of New York has determined that disclosing the Monitor Report "at this time would interfere with that prosecution." ECF No. 15-7 at 3 (Kessler Decl. ¶ 8). The Moeser Declaration details the importance of maintaining the confidentiality of sensitive

---

[8]     The government indicated its willingness to file *ex parte* and under seal a further description of the potential interference with enforcement proceedings, *see* ECF No. 15-7 at 3-4 (Kessler Decl. ¶ 8), if the Court deems additional information necessary to support EOUSA's invocation of Exemption 7(A). Because DOJ invokes other FOIA exemptions that provide independent bases for withholding the Monitor Report in full, any additional material related to Exemption 7(A) is cumulative and unnecessary.

Nevertheless, DOJ objects to Plaintiffs' request that the Court publicly disclose to them "some kind of summary" of any additional information the Court may request from DOJ. Plaintiffs proffer no support for this request. *Cf. BuzzFeed, Inc. v. Dep't of Justice*, 318 F. Supp. 3d 347, 364 (D.D.C. 2018) (indicating, outside FOIA context, that the district court issued under seal and served only upon government respondents an addendum explaining why the district court rejected arguments presented in *in camera*, *ex parte* submissions); *Shapiro v. Dep't of Justice*, 239 F. Supp. 3d 100, 111 (D.D.C. 2017) (permitting submission of declaration *in camera* and *ex parte* and denying the plaintiffs' request to make public portions of the declaration). This case also does not implicate the concerns raised in *Strang v. U.S. Arms Control and Disarmament Agency*, 920 F.2d 30 (D.D.C. 1990), wherein the district could held an *ex parte hearing* and entered summary judgment without first disclosing to the plaintiff all the evidence that could be disclosed without violating a privilege claim.

[9]     The government addresses below Plaintiffs' generalized and unsubstantiated request for *in camera* review.

information contained in the Monitor Report to further DOJ's enforcement and prosecutorial efforts, and the resulting harms if the Monitor Report is publicly disclosed. *See* ECF No. 10-15 at 8-9 (Moeser Decl. ¶¶ 18-21). These declarations are accorded a presumption of good faith that Plaintiffs fail to overcome. *See Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 385-86 (D.C. Cir. 2007); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Plaintiffs' continued reliance upon Judge Gleeson's rejected reasoning fails for the reasons discussed above.

In short, DOJ has provided adequate evidence for the Court to conclude that it properly invoked Exemption 7(A) to withhold in full the Monitor Report.

**V.    The Government Properly Invoked Exemption 7(D) to Withhold the Monitor Report**

Plaintiffs' four-sentence rebuttal of DOJ's invocation of Exemption 7(D) is insufficient to challenge non-disclosure of the Monitor Report. Plaintiffs assert that Exemption 7(D) applies to information provided from "*sources* that are confidential" and contend that HSBC's acknowledgment that it provided confidential and sensitive information renders HSBC "hardly a confidential source." ECF No. 17-1 at 7. DOJ's evidence refutes Plaintiffs' lackluster argument.

The government's submissions make clear that HSBC *employees* at all levels of its business—"from its senior leadership to front-line staff working in HSBC's businesses across the globe"—participated in thousands of meetings with the monitor's team, provided information requested in accordance with the terms of the deferred prosecution agreement, and were instructed "to cooperate fully with the Monitor's team and to candidly provide all information requested by the Monitor." ECF No. 15-9 at 2 (Kessler Decl. Ex. B). The monitor, Michael G. Cherkasky, acknowledged the significant level of "full, open, and candid cooperation from employees at all levels of the Bank." ECF No. 15-8 at 17 (Kessler Dec. Ex. A (Cherkasky Aff. ¶ 11)). The Monitor Report incorporates "statements of HSBC employees that were promised confidentiality as they

shared information with the Monitor." ECF No. 15-9 at 3 (Kessler Decl. Ex. B). In other words, HSBC employees served as confidential sources of the information they provided to the monitor.

The deferred prosecution agreement also "recognizes [that] public disclosure of the information shared by those employees—on which the Report relies heavily in its assessment and recommendations—creates a serious risk of a chilling effect on the candid exchange of information between HSBC employees and the Monitor." ECF No. 15-9 at 4-5 (Kessler Decl. Ex. B); *see also id.* at 6 (Kessler Decl. Ex. B (explaining that HSBC employees relied upon the assurance of confidentiality under the deferred prosecution agreement "when they agree[d] to communicate in full candor with the Monitor")). Indeed, "[i]f employees anticipate that even portions of the Monitor's reports will become public, they may be far less willing to be fully candid with the Monitor's team for fear that information not deemed necessary to redact will identify or be traceable to them." ECF No. 15-9 at 5 (Kessler Decl. Ex. B). Monitor Cherkasky echoed these concerns:

> I believe, however, that releasing this report publicly would have a chilling effect on those employees, and the level of cooperation and candor that I would receive could decrease substantially. The employees might well become concerned that they would suffer negative repercussions from their statements, or information they have provided, being made public.

ECF No. 15-8 at 17 (Kessler Decl. Ex. A (Cherkasky Aff. ¶ 11)); *see also* ECF No. 15-8 at 27 (Kessler Decl. Ex. A (expressing concern from the FCA that public disclosure of the Monitor Report may contain information criticizing "key employees . . . by name or by title," thereby chilling their participation and undermining the FCA's enforcement efforts), 31 (Kessler Decl. Ex. A (noting that "certain individuals or groups of individuals may be identified by reference to particular roles or departments" and expressing the HKMA's concern that public disclosure of the

report would "inadvertently limit[] the extent to which whistle blowers and staff will come forward and candidly communicate with the Monitor")).

As the foregoing confirms, the Monitor Report contains confidential information furnished by confidential *sources*, *i.e.*, HSBC personnel working at all levels of the company whose openness and candor to the monitor's team was dependent upon assurances that their identities, as well as the information they shared, would be maintained in confidence. Plaintiffs ignore this evidence and fail to overcome DOJ's proper invocation of Exemption 7(D) to protect the identities of these confidential HSBC sources.

## VI.    The Government Properly Invoked Exemption 8 to Withhold the Monitor Report

Next, Plaintiffs' effort to evade Exemption 8 because DOJ's evidence is "far too vague to meet the government's burden," ECF No. 17-1 at 8, is belied by an abundance of evidence confirming that the Monitor Report is subject to withholding under Exemption 8. Plaintiffs' challenge to Exemption 8 lacks merit and, when exposed to scrutiny, succumbs to "shrinkage."[10]

Exemption 8 authorizes withholding of information "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8). Plaintiffs do not question that courts broadly construe Exemption 8. *See* ECF No. 18 at 7; *see also Public Investors Arbitration Bar Ass'n v. SEC*, 930 F. Supp. 2d 55, 70 (D.D.C. 2013) (explaining that Exemption 8 "broadly applies to records related to a regulatory agency's examination of a financial institution, including that financial institution's administrative functions or activities"). Instead, Plaintiffs assert that Exemption 8 "does not look to whether the report was obtained by or even used by such an agency, but only whether that was the *intended purpose* when the report was

---

[10]    *Seinfeld: The Hamptons* (NBC television broadcast May 12, 1994).

prepared." *Id.* at 8 (emphasis added). While Plaintiffs lecture DOJ and the Court about statutory construction, they offer no textual support for their flawed interpretation.

Statutory construction begins with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose. *Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004). Exemption 8 shields from disclosure information contained in reports "prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8). Canons of construction suggest that "terms connected by a disjunctive be given separate meanings." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Here, Congress extended Exemption 8 to specific reports prepared (1) by an agency engaged in financial regulation, (2) on behalf of an agency engaged in financial regulation, or (3) for the use of an agency engaged in financial regulation. Contrary to Plaintiffs' interpretation, there is no statutory requirement about any "*intended purpose* when the report was prepared." ECF No. 18 at 8 (emphasis added).

This Court has made clear that Exemption 8 "covers all material that is 'related to' such reports, not just reports themselves. Hence, the 'related to' language casts a wide net of non-disclosure over any documents that are logically connected to an 'examination, operating, or condition report[].'" *Public Investors Arbitration Bar Ass'n*, 930 F. Supp. 2d at 62 (quoting 5 U.S.C. § 552(b)(8)). In other words, Exemption 8 "extends to any documents *received by a financial regulatory agency* in the course of exercising its 'regulatory responsibilities in relation to the financial institutions whose information has been withheld.'" *Id.* (quoting *McKinley v. FDIC*, 744 F. Supp. 2d 128, 144 (D.D.C. 2010)) (emphasis added). And the D.C. Circuit has held that, under Exemption 8, "examination reports need not pertain to an institution that is regulated

or supervised by the withholding agency." *Public Citizen v. Farm Credit Admin.*, 938 F.2d 290, 294 (D.C. Cir. 1991).

Plaintiffs recognize that the Federal Reserve "is a qualifying agency," ECF No. 17-1, at 8, and do not dispute the Federal Reserve's assertions that the Monitor Report was provided to and reviewed by the regulator, it contains information from Federal Reserve reports, and "public disclosure of all or any portion of the Monitor Report would seriously impair . . . the [Federal Reserve's] ability to carry out its responsibilities to supervise banking organizations," ECF No. 15-8 at 19 (Kessler Decl. Ex. A). These are the exact considerations Exemption 8 is designed to address. Plaintiffs' concessions should end the inquiry and shield from public disclosure the entire Monitor Report.

First, the Monitor Report is a component of the Federal Reserve's own enforcement proceedings against HSBC.[11] The Federal Reserve issued a cease and desist order requiring HSBC to submit an acceptable Office of Foreign Assets Control ("OFAC") compliance program. ECF No. 15-8 at 19 (Kessler Decl. Ex. A). That program must be reviewed by an independent

---

[11]    The Federal Reserve's involvement in HSBC enforcement proceedings and reliance upon the Monitor Report cannot be disputed. Nor do Plaintiffs dispute that the FCA engages in financial regulation. Plaintiffs' statement that the FCA is a "foreign government, " ECF No. 17-1 at 8, however, is inaccurate. The FCA is an "independent public body funded entirely by the firms [it] regulate[s]." https://www.fca.org.uk/about/the-fca (last visited Oct. 16, 2020); *see also* https://complyadvantage.com/knowledgebase/fca-financial-conduct-authority/ (last visited Oct. 16, 2020) (explaining that the FCA is an "independent, non-governmental body" that regulates the United Kingdom's financial services industry).

Plaintiffs' argument that the FCA does not qualify under Exemption 8 is misplaced. Plaintiffs do not seek *from the FCA* disclosure of the Monitor Report. *Cf.* 5 U.S.C. §§ 551(1), 552(f) (defining the agencies subject to FOIA). The FCA's reliance upon and use of the Monitor Report is further evidence confirming the Monitor Report is not subject to disclosure under Exemption 8. *See* ECF No. 15-10 at 7 (Moeser Decl. ¶ 16 (noting that the FCA's submission, along with statements by other entities, "demonstrate[s] some of the reasons why the Monitor's reports should be kept confidential pursuant to Exemption 8")). That said, the other regulatory bodies at issue here also fit within the purpose of the exemption.

consultant approved by the Federal Reserve and the FSA.  *Id.* (Kessler Decl. Ex. A).  HSBC selected Mr. Cherkasky as the independent consultant, and the Federal Reserve approved that selection in October 2013.  *Id.* (Kessler Decl. Ex. A).  Thus, Mr. Cherkasky's work and the reports he produced are an extension of the Federal Reserve's ongoing enforcement action against HSBC. *See id.* at 20 (Kessler Decl. Ex. A (explaining that certain Federal Reserve enforcement actions, including the action against HSBC, require regulated organizations to retain an independent consultant)).  Plaintiffs admit as much.  *See* ECF No. 17-1 at 9 ("[I]t is true that [Mr. Cherkasky] was appointed as an 'independent consultant' pursuant to a cease and desist order from the Federal Reserve[.]").

Second, the Federal Reserve described why Mr. Cherkasky's work and the Monitor Report itself are essential to its regulatory and enforcement functions.  The Federal Reserve is the "primary U.S. federal regulator" of HSBC and must "ensure that activities conducted by the institution outside the United States comply with applicable Unitd States laws, rules, and regulations and that the institution maintains a strong commitment towards compliance."  ECF No. 15-8 at 20 (Kessler Decl. Ex. A).  Mr. Cherkasky "provides valuable information to the Federal Reserve" regarding HSBC's OFAC compliance efforts," *id.* at 19 (Kessler Decl. Ex. A), information that the Federal Reserve would not otherwise obtain absent the monitor's work and reports, *see id.* at 20 (Kessler Decl. Ex. A (explaining that the "activities that led to the Federal Reserve's enforcement action against [HSBC] were primarily conducted in foreign offices where [its] supervisors have less visibility into the institution's operations")).

Third, the Federal Reserve detailed the adverse effects that public disclosure of the Monitor Report would have upon its enforcement activities, which extend beyond HSBC.  *See id.* at 19 (Kessler Decl. Ex. A (explaining that disclosure "of all or any portion of the Monitor Report would

seriously impair . . . the Board's ability to carry out its responsibilities to supervise banking organizations, including [HSBC]")). The specter of public disclosure, the Federal Reserve explained, "could impact Federal Reserve examiners similarly, thereby reducing the effectiveness of the Federal Reserve's supervision. Open and candid communications between examiners and regulated organizations are critical to the effectiveness of the Federal Reserve's ongoing supervision program." *Id.* at 20 (Kessler Decl. Ex. A) (emphasis added). The Federal Reserve further explained that, absent robust oversight that would be compromised by disclosure of the Monitor Report, HSBC could operate a "weaker firm-wide compliance risk-management program," an outcome that the Federal Reserve "has a strong interest in avoiding." *Id.* (Kessler Decl. Ex. A). These concerns are not limited to work related to HSBC. The Federal Reserve explained that, if *this* report (or portions thereof) were made public, the Federal Reserve would be prejudiced in future instances beause it "might feel compelled to forego the advantages of efficieny and the broad view of the organization that the monitor work provides in order to protect the confidentiality of the [monitor's] work product." *Id.* at 21 (Kessler Decl. Ex. A). In other words, if this report is disclosed, the Federal Reserve lacks confidence that future, similar reports in other cases will not be disclosed, to its detriment.

Plaintiffs's endeavor to challenge the sufficiency of DOJ's evidence supporting application of Exemption 8 is futile because Plaintiffs do not actually challenge any of the aforementioned evidence. The information furnished by the Federal Reserve does not leave Plaintiffs or the Court "clueless," ECF No. 17-1 at 8, about the reasons why the entire Monitor Report falls within Exemption 8. The government's evidence confirms Exemption 8 applies and refutes Plaintiffs' baseless assertion that the "government is bootstrapping a limited involvement of the Federal Reserve to keep the entire report secret[.]" *Id.* at 9. The record in this case, including admissible

evidence furnished by the Federal Reserve, HSBC, DOJ, Mr. Cherkasky, and foreign regulators addresses in detail the foreseeable and severe harm that would result from any disclosure of the Monitor's Report.  *See infra* Part VII.  Plaintiffs cannot ignore these materials, dispute their admissibility, or overcome them by invoking Judge Gleeson's discredited reasoning.  *See* ECF No. 18 at 9.

In short, DOJ properly withheld the entire Monitor Report pursuant to Exemption 8.

## VII.    The Government Complied with and Satisfied FOIA's Foreseeable Harm Requirements

Plaintiffs' claim that the government "ignores the foreseeable harm requirement," ECF No. 17-1 at 5, lacks any support.  DOJ's declarations and evidence accompanying the Motion are replete with explanations addressing specific foreseeable harm resulting from disclosure of the Monitor Report.

For example, Margaret A. Moeser explained that any release of sensitive information deemed confidential, such as the Monitor Report, "would be harmful even after the conclusion" of a deferred prosecution agreement.  ECF No. 15-10 at 5 (Decl. Margaret A. Moeser ("Moeser Decl.") ¶ 11); *see also id.* at 8 (Moeser Decl. ¶ 20 (detailing regulators' concern that public disclosure of all or any portion of the Monitor Report would cause serious impairment to bank regulation).  HSBC demonstrated how release of confidential and proprietary businesss information would disadvantage the company and create an unfair advantage to competitors.  *See* ECF No. 15-6 at 4 (Jolly Decl. Ex. C); *accord* Naftalis Decl. Ex. at 4; *see also* ECF No. 15-9 at 1-6 (Kessler Decl. Ex. B).  The Federal Reserve articulated multiple reasons why disclosure of the Monitor Report would impete its enforcement efforts.  ECF No. 15-8 at 18-21 (Kessler Decl. Ex. A).  Mr. Cherkasky identified numerous harms that would adversely affect his work, *id.* at 15-17 (Kessler Decl. Ex. A).  So, too, did the FCA, HKMA, and Bank Negara Malaysia.  *See id.* at 22-

33 (Kessler Decl. Ex. A).  Furthermore, redacting confidential information would not allay these concerns because the foreign regulators and others who provided access to sensitive financial data "would have little confidence that similar information provided in the future will remain private." ECF No. 15-6 at 4 (Jolly Decl. Ex. C); *accord* Naftalis Decl. Ex. at 4.

All of these explanations, which focus upon the specific information contained in the Monitor Report, are more than sufficient to satisfy FOIA's foreseeable harm requirement.  *See Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020).

## VIII.  *In Camera* Inspection of the Monitor Report is Unwarranted

Finally, Plaintiffs claim that "You've gotta see the baby!"[12] and ask the Court to conduct *in camera* review of the Monitor Report.  Plaintiffs' sole justification for *in camera* review—that "the government here takes positions that contradict Judge Gleeson's opinion," ECF No. 17-1 at 10—is baseless: Judge Gleeson's overturned ruling has no persuasive value and is an insufficient basis for *in camera* inspection, particularly when set against the extensive declarations and other evidence submitted in support of the government's Motion.

Examination *in camera* "is a 'last resort' to be used only when the affidavits are insufficient for a responsible de novo decision."  *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  Indeed, summary judgment is appropriate without *in camera* review of materials where "the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith."  *Id.*

Plaintiffs identify no reason that warrants *in camera* review here.  The Second Circuit's opinion in *HSBC Bank* confirms that the Monitor Report is not subject to disclosure, and the

---

[12]    *Seinfeld: The Hamptons, supra* n.10.

government's evidence—including the Jolly, Kessler, and Moeser Declarations—explains in detail why the Monitor Report may not be released under FOIA. Plaintiffs make no showing why this Court should not accord "substantial weight" to DOJ's declarations. *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 798 F. Supp. 2d 26, 30 (D.D.C. 2011) (citing *Hayden*, 608 F.2d at 1387). They also offer no evidence that contradicts the declarations or suggests any bad faith, *id.*, and provide no basis for the Court, "as an initial step, to order the release of the report's table of contents,"[13] ECF No. 18 at 10.

Plaintiffs have failed to meet their burden of demonstrating the utility of *in camera* review. Consequently, the Court should reject Plaintiffs' request outright.

\*        \*        \*

---

[13]    Plaintiffs' expression that they "would be happy to review" the Monitor Report's table of contents to facilitate "narrowing the scope of the inspection to particular sections," ECF No. 18 at 10, is puzzling. The government has shown why the *entire* Monitor Report is not amenable to disclosure under any of the FOIA exemptions at issue. Plaintiffs have no basis to ask this Court to ignore federal law by compelling partial disclosure of protected material and then permit them to cherrypick from an unlawful disclosure information that piques their interest.

## CONCLUSION

For the foregoing reasons and those articulated in the government's Motion, the Court should enter summary judgment in favor of the government and deny Plaintiffs' Cross-Motion. A proposed order accompanies this submission.

Dated: October 16, 2020                   Respectfully submitted,

                                          MICHAEL R. SHERWIN
                                          Acting United States Attorney

                                          DANIEL F. VAN HORN, D.C. Bar No. 924092
                                          Chief, Civil Division

                          By:    /s/ Robert A. Caplen
                                 Robert A. Caplen, D.C. Bar No. 501480
                                 Assistant United States Attorney
                                 555 Fourth Street, N.W.
                                 Washington, D.C. 20530
                                 (202) 252-2523
                                 robert.caplen@usdoj.gov

                                 *Counsel for Defendant*