UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD and BUZZFEED, INC., | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) Civil Action No. 19-3192 (RC) <br> ) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

**PLAINTIFFS' COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION**

This case involves a monitor's report that was created pursuant to the government's deferred prosecution agreement with HSBC over its faulty money-laundering controls and violations of sanctions and anti-money-laundering laws.  In the underlying HSBC criminal matter, Judge Gleeson ordered the release of portions of the report, which was reversed by the Second Circuit on other grounds.  The report has been withheld in full under FOIA based on Exemptions 4, 7(A), and 8, with additional withholdings of limited portions on other grounds that Plaintiffs do not challenge. The Court previously denied both parties' motions for summary judgment and provided instructions to the government on what it must do to meet its burden of proof.

The Court should order the immediate release of all portions of the report that Judge Gleeson had ordered released because the government has not explained with any specificity how a foreseeable harm would result from release of that information.  As to the rest of the report, the government's supporting evidence remains too vague, and so the Court should conduct an *in camera* review of the report, the prospect of which the Court noted in its prior order.

# I.   ARGUMENT

In previously denying both sides' summary judgment motions and leaving open the possibility of a future *in camera* inspection, the Court ordered the government to "conduct a line-by-line review of the Report," to "show with reasonable specificity that [the Report] cannot be further segregated," and to, "at minimum, provide greater detail on the basis for withholding the specific portions of the Report that Judge Gleeson concluded were appropriate for release to the public." Op. at 22-24, ECF No. 25.  Any Exemption 7(A) claim would also require further detail about any enforcement proceedings, *ex parte* and under seal if necessary.  *Id.* at 24 n.12.

Plaintiffs do not dispute that there has been a line-by-line review, but the government has otherwise failed to meet its burden of proof.

### A.   The government has not shown any foreseeable harm under any exemptions for material that Judge Gleeson ordered released.

Under the 2016 FOIA amendments, it is not sufficient on its own for the government to show that Exemptions 4, 7(A), or 8 apply to the report.  Rather, the government also faces a "meaningful burden"—beyond the elements of its exemption claims—to prove also that release of the information "would" result in a foreseeable harm to an interest protected by those exemptions. *Reps. Comm. for Freedom of the Press v. FBI,* 3 F.4th 350, 369 (D.C. Cir. 2021).  This requires a "focused and concrete demonstration." *Id.* at 370.

Here, the Court required the government to address in "greater detail" "the basis for withholding the specific portions of the Report that Judge Gleeson concluded were appropriate for release to the public." Op. at 23-34, ECF No. 25.  Neither of the government's declarations provide any such detail, however, and the only discussion of the order is the government's statement that Judge Gleeson did not address any FOIA exemptions, which this Court had already observed when it required the government to furnish additional details.  Kessler Decl. at ¶ 7, ECF No. 34-3; *see*

Op. at 23, ECF No. 25.  That is reason alone to deny the government's foreseeable harm claim as to this material: it has not provided a "focused and concrete demonstration," or the "greater detail" that this Court ordered, and its claim of foreseeable harm conflicts with Judge Gleeson's decision to release certain information based on his familiarity with the report and the potential harms to HSBC, future monitoring arrangements, or relationships with international regulators from the ordered disclosure.

In addition to the material ordered released by Judge Gleeson, and while it is the government's burden to prove foreseeable harm and not a requester's obligation to disprove anything, it is implausible that material like background information and at least parts of a table of contents would cause any harm to exemption-protected interests.  The government offers no evidence or focused demonstration that it would, and instead relies on blanket claims without addressing these specific aspects of the report.  *See generally* Kessler Decl.; Naftalis Decl.  Further, one of the government's declarants has already provided a high-level explanation of the work the monitor performed, *see* Naftalis Decl. at ¶¶ 8-9, 15, ECF No. 34-4, yet the government offers no explanation as to how the portions of the report explaining such general scope of work performed could possibly result in any foreseeable harm.  All of that information is useful to Plaintiffs, and the public, in understanding the monitor's work and conclusions, even if specific details of HSBC's operations that are outside the scope of Judge Gleeson's order are redacted.

The government has now had ample opportunity to show that foreseeable harm would result from release of the material that Judge Gleeson had ordered released but has failed to do so.  Therefore, under the foreseeable harm requirement, the Court should order the government to release all such portions of the report, even if it concludes that the exemptions apply to them, and

should conduct an *in camera* inspection to identify background, scope of work, table of contents information, and any other material that can be released without fear of foreseeable harm.

> **B.  The government has not shown that there are no segregable parts of the report that are outside the scope of Exemption 8.**

In addition to material that must be released based on the government's failure to show foreseeable harm, the government also has not met its burden as to the entirety of the report under the asserted exemptions.

While the Court was skeptical in its earlier ruling that any part of the report would be outside the scope of Exemption 8,[1] Op. at 23 n. 11, ECF No. 25, under the plain text of the exemption, the government must prove that the report, or any information that is "related to" the report, was "prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8); *see* Pl. Mem. at 7-9, ECF No. 17-1. The government does not contend that the Justice Department is such a qualifying agency, and thus, while it may be the case that aspects of the report were performed for the Federal Reserve pursuant to its regulation and supervision of HSBC or are related to that work, any other parts of the report, including any material that was created only for the purposes of criminal enforcement by the Justice Department, should be segregated and released under Exemption 8 as unrelated to a report prepared for an "agency responsible for the regulation or supervision of financial institutions." The government has not shown that there is no information that can be segregated on this basis.

---

[1] While the Court noted the "broad scope of Exemption 8," Op. at 23 n.11, ECF No. 25, that is irrelevant to the foreseeable harm analysis just discussed because foreseeable harm applies even when a record is exempt under a broad (or any other) exemption. *See generally Reps. Comm. for Freedom of the Press,* 3 F.4th at 369.

Moreover, the government's own arguments make clear that there is likely a distinction between these two aspects of the monitor's work. It claims that Mr. Cherkasky performed a "similar" role for the Federal Reserve and under the DPA, *see* Op. at 21, ECF No. 25, which necessarily concedes that there is at least some difference, and which difference should have been specifically addressed in the government's declarations but was not. Instead, Kessler's declaration simply concludes, in reliance on a single paragraph in Naftalis's declaration, that Exemption 8 applies to the entire report and that nothing can be segregated and released. Kessler Decl. at ¶¶ 3-4, ECF No. 34-3. Naftalis—an attorney for HSBC whose client has an admitted self-interest in keeping everything about this matter secret, *see* Naftalis Decl. at ¶ 2, ECF No. 34-4 ("HSBC strenuously objects to any public disclosure")—states that "the entire purpose and function of the Report was to conduct a detailed assessment of HSBC's AML and sanctions compliance program." *Id.* at ¶ 21. That may be, but Naftalis does not address the extent to which that assessment was done for the purposes of Federal Reserve oversight, as opposed to criminal enforcement purposes by prosecutors. Had Congress intended all material about AML and sanctions compliance by financial institutions in any agency records to be secret, regardless of the purpose for which it was created, it would have said so, but did not. As a result, the government relies on an overly expansive interpretation of Exemption 8, and the Court should conduct an *in camera* inspection to identify the parts of the report that were clearly created for or are related to the Federal Reserve's purposes and reject the government's Exemption 8 claim as to the rest.

    **C.**    **The government has not shown that there are no segregable parts of the report that are outside the scope of Exemption 4.**

As they did in the earlier briefing, Plaintiffs do not dispute that the report contains material about HSBC's operations that HSBC ordinarily keeps confidential and that was provided to the monitor with an expectation of confidentiality. But the government has offered no explanation for

how the monitor's findings or background information about the monitor's work qualify as HSBC's confidential or proprietary information. For example, if the monitor stated that "HSBC failed to comply with anti-money-laundering laws during the monitoring period," the factual basis for that conclusion might implicate Exemption 4 but not the monitor's finding itself, and the government has failed to show with the specificity required by the Court that such information cannot be segregated. Therefore, the Court should conduct an *in camera* inspection to resolve this issue.

### D. The government's Exemption 7(A) claims turn on its *ex parte* submissions.

Finally, the government does not seem to contend that its publicly filed Exemption 7(A) material is adequate to meet its burden, but instead relies on its *ex parte* submissions, to which Plaintiffs are unable to respond. Def. Mem. at 4-5, ECF No. 34-2. Plaintiffs ask that the Court consider whether any portions of those materials could be filed publicly, and if so, provide Plaintiffs an opportunity to respond to them if the Court is inclined to accept any part of the government's Exemption 7(A) claim. That said, there is no apparent basis for the government's blanket Exemption 7(A) claim as opposed to tailored redactions, and the Court must be satisfied that at the time of its decision, some proceedings are actually pending or likely. *See, e.g., Kay v. FCC,* 976 F. Supp. 23, 37-38 (D.D.C. 1997) (noting temporal nature of Exemption 7(A)); *see* M. Warbutron, Reuters, *Canada Judge Won't Allow Huawei CFO to us HSBC Documents in U.S. Extradition Case*, July 9, 2021 (noting connection between Meng Wanzhou case and HSBC)[2]; C. Duffy and E. Perez, CNN Business, *Huawei CFO Meng Wanzhou Reaches Agreement with US to Resolve Fraud Charges*, Sept. 25, 2021[3].

---

[2] *Available at* https://www.reuters.com/business/canada-judge-wont-allow-huawei-cfo-use-hsbc-documents-us-extradition-case-2021-07-09/.
[3]     *Available    at*    https://www.cnn.com/2021/09/24/tech/meng-wanzhou-huawei-us-plea-deal/index.html.

- 7 -

## II. CONCLUSION

For these reasons, the Court should order the release of all material Judge Gleeson had ordered released and conduct an *in camera* inspection of the remainder of the report.

Dated:  November 24, 2021                                  Respectfully Submitted,


*/s/ Matthew V. Topic*
Matthew V. Topic, Bar No. IL0037
Joshua Hart Burday, Bar No. IL0042
Merrick J. Wayne, Bar No. IL0058
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, Illinois 60607
Tel.: (312) 243-5900
Fax: (312) 243-5902
foia@loevy.com

*Attorneys for Plaintiffs*