**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JASON LEOPOLD and BUZZFEED, INC., | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 19-3192 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 34, 38 |
| | : | | |
| UNITED STATES DEPARTMENT OF | : | | |
| JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This case concerns Plaintiffs' rejected Freedom of Information Act ("FOIA") request for

a report crafted by an independent monitor pursuant to the Department of Justice's (the

"Department") deferred prosecution agreement ("DPA") with HSBC,[1] a bank that was charged

with violating anti-money-laundering and sanctions compliance laws.

In 2015, the First Annual Follow-Up Review Report (the "Report") was submitted to the

Department, the U.S. Board of Governors of the Federal Reserve System (the "Federal

Reserve"), and the United Kingdom's Financial Conduct Authority (the "FCA").  Several years

after his approval of the DPA, Judge Gleeson of the U.S. District Court for the Eastern District of

New York granted a third party's First Amendment right of access request to unseal the Report.

---

[1] The Court uses "HSBC" to collectively refer to HSBC Holdings plc, the ultimate parent
company, HSBC North America Holdings, Inc., a subsidiary of HSBC Holdings plc, and HSBC
Bank USA, a subsidiary of HSBC North America Holdings, Inc.

The U.S. Court of Appeals for the Second Circuit overturned Judge Gleeson's ruling on the basis that the Report was not a "judicial document" appropriate for release under a First Amendment right of access claim, and the court noted that a FOIA request would be the appropriate avenue for seeking public disclosure of the Report.

Plaintiffs subsequently submitted a FOIA request for the Report and the government denied the request, invoking FOIA exemptions 4, 6, 7(A), 7(C), 7(D), and 8.  Plaintiffs filed suit challenging that denial.  In ruling on the parties' previous cross-motions for summary judgment, the Court held that Exemptions 4 and 8 applied to the Report but that additional evidence and analysis was required to determine whether any part of the Report was reasonably segregable and appropriate for release.  The Department has since conducted a line-by-line review and determined that no portion is reasonably segregable, and both parties have again moved for summary judgment.  Based on the record, the parties' arguments, and the reasons set forth below, the Court is now convinced that Exemption 8 is broad enough to withhold the Report in its entirety, and thus grants Defendant's motion for summary judgment.

## II.  FACTUAL BACKGROUND

### A.  HSBC Prosecution

On December 11, 2012, the Department charged HSBC with violating 31 U.S.C. §§ 5318(h) and 5318(i) for its failure to maintain an adequate anti-money-laundering program and for its failure to conduct and maintain sufficient oversight of correspondent bank accounts held on behalf of foreign entities.  *See United States v. HSBC Bank USA, N.A.* ("*HSBC I*"), No. 12-CR-763, 2013 WL 3306161, at *1 (E.D.N.Y. July 1, 2013); Gov't Statement of Undisputed Material Facts ("Gov't Statement of Facts") ¶ 1, ECF No. 15-2.  In addition to filing the criminal information laying out those charges, the government also filed a DPA and a corporate

compliance monitor agreement.  *HSBC I*, 2013 WL 3306161, at *1; *see also* DPA, *HSBC I*, No. 12-CR-763 (E.D.N.Y. Dec. 11, 2012), ECF No. 3-2; Corporate Compliance Monitor ("Monitor Agreement"), *HSBC I*, No. 12-CR-763 (E.D.N.Y. Dec. 11, 2012), ECF No. 3-4.[2]  Judge Gleeson approved the DPA and retained jurisdiction over the case until the expiration of the agreement so that he could "ensure that the implementation of the DPA remains within the bounds of lawfulness." *HSBC I*, 2013 WL 3306161, at *11.

The DPA set out HSBC's admission of guilt but provided that prosecution would be deferred for five years, during which time an independent monitor would surveil the bank and submit annual reports to the Department, the Federal Reserve, and the FCA spelling out HSBC's efforts to comply with the laws it had violated.[3]  *See* DPA ¶¶ 3, 5, 14–15; *see also* Monitor Agreement ¶ 1 (establishing agreement to have an independent monitor evaluate "the effectiveness of the internal controls, policies and procedures of [HSBC] . . . as they relate to HSBC['s] ongoing compliance with the Bank Secrecy Act, International Emergency Economic Powers Act, Trading with the Enemy Act and other applicable anti-money laundering laws").  Michael Cherkasky was selected to serve as the independent monitor.  Gov't Statement of Facts ¶¶ 5–6, ECF No. 15-2; Pls.' Resp. to Gov't Statement of Facts ¶ 6, ECF No. 17-3; Kessler Decl. Ex. A at 15–17, Aff. of Michael G. Cherkasky ("Cherkasky Aff.") ¶ 2, ECF No. 15-8.  The

---

[2] The Court takes judicial notice of both the DPA and the Monitor Agreement as records of a related proceeding in another court. *See, e.g.*, *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (taking judicial notice of record in related action "pursuant to [its] authority to judicially notice related proceedings in other courts" (citations omitted)).

[3] The Department, the Federal Reserve, and the FCA all charged HSBC with violating anti-money laundering and sanctions compliance laws, although each did so through different means: the Department entered into the DPA, the Federal Reserve issued a cease and desist order, and the FCA issued a direction.  Cherkasky Aff. ¶ 2, ECF No. 15-8 at 15.

independent monitor was permitted "access to all information, documents, records, facilities and/or employees, as reasonably requested by the Monitor," so long as that information was not protected by either attorney-client privilege or the work-product doctrine.  Monitor Agreement ¶ 2.  The information obtained was to be used by the independent monitor to draft annual reports analyzing HSBC's compliance and proposing recommendations to further the goals of the DPA. *Id.* ¶¶ 3–4.  These annual reports were to be submitted to HSBC, the Department, the Federal Reserve, and the FCA.  *Id.* ¶ 4.  The Monitor Agreement made clear that the reports would "likely include proprietary, financial, confidential, and competitive business information" and that "public disclosure of the reports could discourage cooperation [and] impede pending or potential government investigations."  *Id.* ¶ 9.  Due to these concerns, the agreement further stated that "the reports and the contents thereof are intended to remain . . . non-public."  *Id.*

## B.  The Report

Mr. Cherkasky transmitted the Report to the parties to the DPA in January 2015. Cherkasky Aff. ¶ 4.  The 1,000-page Report contains an extensive evaluation of HSBC's anti-money-laundering and sanctions compliance programs, and it details HSBC's efforts toward reforming the programs to comply with the laws the bank had violated.  *Id.*; *see* Naftalis Decl. Ex. A at 3, ECF No. 20-2.  The Report also pinpoints a number of current defects and shortcomings in these programs.  Cherkasky Aff. ¶ 12.  In addition, the Report "details HSBC's practices with respect to investigating and filing suspicious activity reports . . . [and] provides extensive detail about HSBC's sensitive proprietary information used in combatting financial crime."  Naftalis Decl. Ex. A at 3, ECF No. 20-2.

The Report was created through "independent testing conducted" by Mr. Cherkasky, and he received assistance from other regulators around the world.  Cherkasky Aff. ¶ 9.  These

foreign regulators helped him gain access to confidential client information under "the presumption of confidentiality." *Id.*  Additionally, "[m]uch of [Mr. Cherkasky's] work depend[ed] on full, open, and candid cooperation from employees at all levels of the Bank." *Id.* ¶ 11; *see also* Naftalis Decl. Ex. A at 3, ECF No. 20-2 ("HSBC provided this sensitive banking information to the Monitor based on the express assurance that this information would remain confidential.").

### C.  Judge Gleeson's Order and Second Circuit Opinion

Several years after his approval of the DPA, in *United States v. HSBC Bank USA, N.A.* ("*HSBC II*"), No. 12-CR-763, 2016 WL 347670 (E.D.N.Y. Jan. 28, 2016), *rev'd*, 863 F.3d 125 (2d Cir. 2017), Judge Gleeson granted a third party's request to unseal the Report based on a First Amendment right of access claim.  He determined that, because he was continuing to oversee the administration of the DPA and the parties had filed that agreement in his court, the Report was a "judicial document" subject to a First Amendment right of access.  *Id.* at *2–4.  As such, he held that the Report should be released with redactions.  *Id.*

The plaintiffs and defendants in that case, both of whom objected to the third party's motion to unseal the Report, advanced four reasons for withholding the Report.  *Id.* at *5–7. First, the parties argued that HSBC's employees might cease to provide the cooperation necessary for the Monitor to gather the information he needed.  *Id.* at *5.  Judge Gleeson felt that this harm could be avoided by redacting the names of those employees, thus still preserving those individuals' confidentiality.  *Id.*  Second, the parties contended that unsealing the Report "could give criminals a 'road map' to exploit weaknesses" in HSBC's current programs.  *Id.* at *6.  Judge Gleeson said that he did not believe the information in the Report would be useful to potential money launderers looking to exploit HSBC's systems, but to the extent that it would, he

would allow for redactions on those grounds.  *Id.*  Third, the government argued that unsealing the Report would interfere with its ability to effectively use independent monitors in the future and that foreign regulators would see disclosure of the Report as a sign not to cooperate with monitors gathering information for the U.S. government.  *Id.*  Judge Gleeson dismissed this argument, stating that he was not concerned with law enforcement practices and the "government did not have to file a DPA in this case."  *Id.*  Fourth, the parties asserted that disclosure would damage Mr. Cherkasky's relationship with other foreign regulators and prevent the production of the remaining reports required under the DPA.  *Id.*  Judge Gleeson addressed these concerns by ordering five appendices of the Report which dealt with the operations of HSBC in foreign countries to remain under seal.  *Id.*  He kept the Report under seal while the parties proposed redactions and as the government appealed the ruling.  *See HSBC I*, No. 12-CR-763 (E.D.N.Y. Mar. 9, 2016), ECF No. 70.

The Second Circuit reversed, finding that the Report was not a judicial document and therefore not subject to a First Amendment right of access.  *See United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 142 (2d Cir. 2017).  The court took no position on whether Judge Gleeson's analysis of the harms that might result from disclosure was correct.  Rather, the court simply stated that "'[t]he appropriate device' for obtaining executive records 'is a Freedom of Information Act request addressed to the relevant agency.'"  *Id.* at 142 n.7 (quoting *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997)).  The court "offer[ed] no view on whether any of FOIA's exemptions would apply."  *Id.*

### D.  Parties' Previous Cross-Motions for Summary Judgment

Plaintiffs Jason Leopold and Buzzfeed filed a FOIA request with the Executive Office of the United States Attorneys ("EOUSA") in July 2019.  Gov't Statement of Facts ¶ 14; Pls.' Resp.

to Gov't Statement of Facts ¶ 14; *see also* Compl. Ex. A, ECF No. 1-1.  The U.S. Attorney's Office for the Eastern District of New York ("USAO-EDNY") searched for and found the Report.  Gov't Statement of Facts ¶ 17; Pls.' Resp. to Gov't Statement of Facts ¶ 17.  The government denied Plaintiffs' request and invoked FOIA exemptions 4, 6, 7(A), 7(C), 7(D), and 8.  Gov't Statement of Facts ¶ 18; Pls.' Resp. to Gov't Statement of Facts ¶ 18.  Plaintiffs then filed this lawsuit, contending that the claimed FOIA exemptions did not apply.  *See* Compl., ECF No. 1.  Both parties then moved for summary judgment.  *See* Gov't Mem. Supp. Mot. Summ. J. ("Gov't Mem."), ECF No. 15-1; Pls.' Mem. Supp. Mot. Summ. J. ("Pls.' Mem."), ECF No. 17-1. Along with its motion, the Department filed four declarations from various insiders who attested to the contents of the Report and the applicability of various FOIA exemptions.  *See* Jolly Decl., ECF No. 15-3; Kessler Decl., ECF No. 15-7; Moeser Decl., ECF No. 15-10; Naftalis Decl., ECF No. 20- 2.

Although it found that Exemptions 4 and 8 applied to the Report generally, the Court denied both parties' motions for summary judgment, directing the Department to conduct a line-by-line review of the Report to determine if any information contained therein was segregable from the portions that needed to be withheld.  Mem. Op. at 22–24, ECF No. 25.  "Given the nature of the monitorship," which seemed to situate the Report squarely within Exemption 4, as well as "the broad scope of Exemption 8, the Court [was] unsure whether any non-exempt information [could] be reasonably segregated.  But the government must fulfill its 'obligation to show with reasonable specificity that a document cannot be further segregated.'"  Mem. Op. at 23 n.11, ECF No. 25 (quoting *James Madison Project v. Dep't of Treasury*, No. 19-cv-2461, 2020 WL 4698435, at *6 (D.D.C. Aug. 13, 2020)).

### E.  The Instant Motion

Following the Court's ruling, attorneys at both the USAO-EDNY and the Department's

Money Laundering and Asset Recovery Section ("MLARS") conducted line-by-line reviews and

determined that no portion could be reasonably segregated because one or more exemptions

applied to every part of the Report.  2d Kessler Decl. ¶ 2, ECF No. 34-3.  David Kessler, an

Assistant United States Attorney at USAO-EDNY, submitted a sworn declaration detailing this

line-by-line review and the segregability determinations that attorneys at both his office and

MLARS made.  *Id.*  Mr. Kessler states that the entire Report can be withheld under Exemption 8

because it falls squarely within the text of the exemption, *id.* ¶ 3; that any "arguably non-exempt

information is not reasonably segregable from the rest of the report because it is inextricably

intertwined with information that is exempt," *id.* ¶ 4; that Mr. Naftalis's conclusion—that "*all*

the information in the Report is exempted from disclosure pursuant to Exemption 8, because the

entire purpose and function of the Report was to conduct a detailed assessment of HSBC's AML

and sanctions compliance program"—is correct, *see id.* ¶ 4 (citing 2d Naftalis Decl. ¶ 21, ECF

No. 34-4); and that Judge Gleeson's contrary opinion in *HSBC II* is not controlling in this case

because the foreseeable harms he believed could be addressed through redactions are broadly

protected against by numerous FOIA exemptions, *id.* ¶¶ 5–7.

The parties have once again moved for summary judgment.  *See* Def.'s Renewed Mot.

Summ. J., ECF No. 34-2; Pls.' Combined Mem. in Opp'n to Def.'s Mot. Summ. J. and in Supp.

Pls.' Cross-Mot. ("Pls.' Combined Mem."), ECF No. 38-1.  The government argues that

Exemptions 7(A) and 8 are both independent grounds for withholding the Report in its entirety,

and it provides additional evidence and argumentation concerning both.  *See* Def.'s Renewed

Mot. Summ. J., ECF No. 34-2; Def.'s Reply in Opp'n to Pls.' Cross-Mot. Summ. J. ("Def.'s

Reply"), ECF No. 42; 2d Kessler Decl., ECF No. 34-3; 2d Naftalis Decl., ECF No. 34-4.

Plaintiffs assert that Exemption 8 is not sufficient grounds for withholding the entire Report, that

the government's evidence is too vague, and that they have not explained in sufficient detail why

the Report should be fully withheld in light of Judge Gleeson's opinion that the harms of

disclosure could be prevented by redactions.  *See* Pls.' Combined Mem., ECF No. 38-1; Pls.'

Reply in Supp. Cross-Mot. Summ. J., ECF No. 45.  Plaintiffs ask the Court to order the release

of those portions of the Report that Judge Gleeson considered appropriate for release and

conduct an *in camera* review to determine for itself whether the rest may properly be withheld.

Pls.' Combined Mem. at 7, ECF No. 38-1.  The parties' motions for summary judgment are fully

briefed and ripe for decision.

### III.  LEGAL STANDARD

The purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a

democratic society, needed to check against corruption and to hold the governors accountable to

the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  FOIA requests

thus provide individuals with the opportunity to obtain access to federal agency records, except

to the extent that such records are protected from public disclosure by one of nine exemptions.

*See* 5 U.S.C. §§ 552(a)(3), (a)(4)(B), (b), (c); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S.

132, 136 (1975); *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017).

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be

granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see, e.g.*, *Alyeska*

*Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) (concluding that unsubstantiated

claims of factual controversies cannot defeat a summary judgment decision in a FOIA case).

FOIA cases are typically resolved through summary judgment because there are rarely any

factual disputes; instead, these cases center on how the law is applied to the records at issue. *See Pinson v. U.S. Dep't of Justice*, 236 F. Supp. 3d 338, 352 (D.D.C. 2017) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *see also Gray v. Southwest Airlines Inc.*, 33 Fed. App'x 865, 868 n.1 (9th Cir. 2002) (citing *Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir. 1996)). Accordingly, in a FOIA suit, summary judgment is appropriate "if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" *Prop. of the People, Inc. v. Off. of Mgmt. and Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).

In a FOIA suit, the court shall determine a motion for summary judgment *de novo*. *See* 5 U.S.C. § 552(a)(4)(B); *Life Extension Found., Inc. v. IRS*, 915 F. Supp. 2d 174, 179 (D.D.C. 2013). Therefore, when assessing non-disclosure decisions in a FOIA action, the court may solely rely on "affidavits or declarations if they describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Life Extension Found.*, 915 F. Supp. 2d at 179 (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Pronin v. Fed. Bureau of Prisons*, No. 17-cv-1807, 2019 WL 1003598, at *3 (D.D.C. Mar. 1, 2019). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Scudder v. CIA*, 254 F. Supp. 3d 135, 140 (D.D.C. 2017) (quoting *Jud. Watch*, *Inc.*

*v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal citations omitted)).  However,

exemptions are to be "narrowly construed." *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 50

(D.D.C. 2019) (quoting *Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007)).  Accordingly, an

agency must do more than provide "summary statements that merely reiterate legal standards or

offer 'far-ranging category definitions for information.'" *Citizens for Resp. & Ethics in Wash. v.

U.S. Dep't of Justice*, 955 F. Supp. 2d 4, 13 (D.D.C 2013) (quoting *King v. U.S. Dep't of Justice*,

830 F.2d 210, 221 (D.C. Cir. 1987)).

## IV.  ANALYSIS

### A.  Introduction

In its previous summary judgment opinion, the Court directed the government to address

in greater detail whether any meaningful portion of the Monitor's Report is segregable from that

1,000-page document.  *See* Mem. Op. at 23 n.11, ECF No. 25 ("[T]he government must fulfill its

'obligation to show with reasonable specificity that a document cannot be further segregated.'"

(citations omitted)).  In determining the applicability of Exemption 8 in its previous opinion, the

Court held only that "*at the very least*, the Report contains information '*related to* examination,

operating, or condition reports' prepared by, on behalf of, or for the use of the Federal Reserve."

Mem. Op. at 20, ECF No. 25 (emphasis added) (quoting 5 U.S.C. § 552(b)(8)).  The Department

now argues that the Report is more fully covered by the exemption.  At the time of its last

submission, the Department had not explained with sufficient specificity how much of the Report

was governed by Exemption 8.  The Department has returned with affidavits detailing the

applicability of Exemption 8 to the Report as a whole, confirming the Court's prior suspicion

that there may be no "non-exempt information [which] can be reasonably segregated." *Id.* at 23

n.11.  The Court notes again that "an agency's [ultimate] justification for invoking a FOIA

exemption is sufficient if it appears 'logical' or 'plausible.'" *Scudder*, 254 F. Supp. 3d at 140. With that standard in mind, the Court holds that Exemption 8 is broad enough to allow the relatively modest evidence provided by the Department to suffice for withholding the Report in its entirety.

### B.  Explanation of Exemption 8

Exemption 8 of the FOIA protects from disclosure those matters that are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."  5 U.S.C. § 552(b)(8).  The D.C. Circuit has noted that even though FOIA exemptions ought to be narrowly construed, Congress "intentionally and unambiguously crafted a particularly broad, all-inclusive definition" with Exemption 8.  *Consumers Union of U.S., Inc. v. Heimann*, 589 F.2d 531, 534 (D.C. Cir. 1978).  Many courts, including this one, have acknowledged Exemption 8's broad sweep.  *See, e.g.*, *Atkinson v. FDIC*, No. 79-1113, 1980 WL 355660, at *2 (D.D.C. Feb. 13, 1980).

Consistent with the exemption's broad sweep, the language of the statute and decisions of other courts make clear that documents "related to" examination reports are also exempt from disclosure.  *Id.* at *1.  Documents that "represent the foundation of the examination process, the findings of such an examination, or its follow-up" fall within the exemption.  *Id.*; *see also Williams & Connolly LLP v. Off. of the Comptroller of the Currency*, 39 F. Supp. 3d 82, 91 (D.D.C. 2014) ("[T]he requested documents constitute communications between [the agency] and the Banks, their proposed independent consultants, and proposed independent counsel . . . and therefore . . . 'relate to' a bank examination." (internal quotation marks omitted)).

Furthermore, the broad sweep of Exemption 8 can be enough to cover the content of "an entire examination report, not just [the content] related to the 'condition of the bank.'" *Atkinson*, 1980 WL 355660, at *2.  This Court has also pointed out that no case from this Circuit has ever made a "distinction between factual versus analytical or deliberative material under this exemption." *Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 170 (D.D.C. 2017).

Congress created Exemption 8 for two primary purposes: (1) the protection of financial institutions and (2) the preservation of the relationship between financial institutions and their supervising agencies. *See Consumers Union*, 589 F.2d at 534.  The first purpose recognizes that release of examination reports "might undermine public confidence and cause unwarranted runs on banks." *Id.*  The second purpose recognizes that disclosure of sensitive information about financial institutions collected by their supervising agencies might discourage the financial institutions from fully cooperating. *Id.*

## C.  Exemption 8 Covers the Report in Full

Many of the parties' Exemption 8 arguments at this stage of the case miss the mark and go beyond the scope of the narrow question the Court's previous opinion left open, namely whether the government could meet its burden of demonstrating that the Report does not contain any segregable, non-exempt content.  The Court will address only the arguments responsive to this question.  One recurring theme in the Department's submissions satisfies their obligation to show that there is no reasonably segregable, non-exempt material.  The Court found in its last opinion that "*at the very least*, the Report contains information '*related to* examination, operating, or condition reports' prepared by, on behalf of, or for the use of the Federal Reserve." Mem. Op. at 20, ECF No. 25 (emphasis added) (quoting 5 U.S.C. § 552(b)(8)).  Now, after attorneys at both MLARS and USAO-EDNY completed line-by-line reviews of the Report, the

Department submits a sworn declaration asserting that the entire Report falls within Exemption

8. *See* 2d Naftalis Decl. ¶ 21, ECF No. 34-4 ("[*A*]*ll* the information in the Report is exempted

from disclosure pursuant to Exemption 8 because the entire purpose and function of the Report

was to conduct a detailed assessment of HSBC's AML and sanctions compliance program."); 2d

Kessler Decl. ¶ 4, ECF No. 34-3 (citing 2d Naftalis Decl. ¶ 21, ECF No. 34-4);[4] Def.'s Reply at

7, ECF No. 42 ("Exemption 8 applies to the entire Report . . . because the Report was submitted

to the Federal Reserve . . . ").  Upon consideration of the government's expanded evidentiary

submission, the text and purposes of the exemption, and the case law, the Court agrees that the

entire Report can be withheld under FOIA Exemption 8.

The D.C. Circuit has determined that the "meaning of exemption 8 [is clear and] its

broad, all-inclusive scope should be applied as written since Congress had 'intentionally and

unambiguously' so contemplated."  *Gregory v. FDIC*, 631 F.2d 896, 898 (D.C. Cir. 1980)

(quoting *Consumers Union*, 589 F.2d at 535).  The relevant portion of the text is worth repeating

here, and it can be broken up into distinct portions for further analysis: "[1] contained in or

related to [2] examination, operating, or condition reports [3] prepared by, on behalf of, or for the

use of an agency responsible for the regulation or supervision of [4] financial institutions."  5

U.S.C. § 552(b)(8).  The last two portions of the text are well-settled and can be disposed of most

easily.  Banks, such as HSBC, clearly qualify as "financial institutions."  *See, e.g.*, *Pub. Citizen*

*v. Farm Credit Admin.*, 938 F.2d 290, 292–93 (D.C. Cir. 1991) (quoting *Financial Institutions*,

---

[4] As the Court noted in the previous opinion, only government employees can be responsible for making segregability determinations and Mr. Naftalis is not a government employee.  Mem. Op. at 22 n.10, ECF No. 25.  However, Mr. Kessler, a government employee, incorporated and confirmed the statements made in paragraph 21 of Mr. Naftalis's declaration, *see* 2d Kessler Decl. ¶ 4, ECF No. 34-3 (citing 2d Naftalis Decl. ¶ 21, ECF No. 34-4), so the Court may look to that paragraph as part of the government's segregability analysis.

Black's Law Dictionary (5th ed. 1979)).  Numerous cases have also decided that the Federal

Reserve is an "agency responsible for the regulation or supervision of financial institutions."

*See, e.g.*, *Clarkson v. Greenspan*, No. 97-2035, 1998 U.S. Dist. LEXIS 23566, at *23 (D.D.C.

June 30, 1998) (holding that the Federal Reserve may withhold records pursuant to Exemption 8

that are created by or for the Federal Reserve).  Although many cases only decided that the

Federal Reserve is a regulator of Federal Reserve Banks, *see id.*; *Ball v. Bd. of Governors of the

Fed. Rsrv. Sys.*, 87 F. Supp. 3d 33, 57–58 (D.D.C. 2015), *Public Citizen* also makes clear that

"examination reports need not pertain to [the specific financial] institution that is regulated or

supervised by the withholding agency."  938 F.2d at 293–94 (explaining that even though the

Farm Credit Administration did not usually regulate the financial institution at issue but had done

so in that case, the examination report it created about that institution could still be withheld

because the Farm Credit Administration was an agency that regulated other financial

institutions).

     The independent Monitor's Report is also an "examination" report within the meaning of

Exemption 8.  In *Pub. Inv. Arb. Bar Ass'n v. SEC* ("*Public Investors I*"), 771 F.3d 1, 5 (D.C. Cir.

2014), the D.C. Circuit held that the definition of "examination" should come straight from the

dictionary and that "examination report" was not a term of art.  Thus, "'examination' reports

encompass any report stemming from the [agency] 'inspect[ing] closely' or 'inquir[ing]

carefully' into something."  *Id.* (quoting *Examination*, Webster's New Collegiate Dictionary 397

(Henry Bosley Woolf, ed. 1977)).  Here, the Federal Reserve participated in the selection of the

monitor, who "inspected closely [and] inquir[ed] carefully" into HSBC's systems for anti-money

laundering and sanctions compliance, *id.*, then crafted a report for the Federal Reserve's use in

its regulatory actions against HSBC.  Def.'s Statement of Undisputed Material Facts ¶¶ 3–8, ECF

No. 34-1.  The Report itself thus qualifies, based on the plain meaning of the statute as interpreted in *Public Investors*, as an "examination report."

Because the text of Exemption 8 covers the Report so precisely, the Report may well in its entirety be an "examination . . . report[] prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."  5 U.S.C. § 552(b)(8). Thus, one could argue that all information in the Report is "contained in" an examination report. But even if all of the information in the Report is not so fully covered by this definition, the Department has plausibly shown that all of the material at least falls under the "related to" language.  After all, "the 'related to' language casts a wide net of non-disclosure over any [material] that [is] logically connected to an 'examination, operating, or condition report[].'" *Pub. Inv. Arb. Bar Ass'n v. SEC* ("*Public Investors II*"), 930 F. Supp. 2d 55, 62 (D.D.C. 2013), *aff'd* 771 F.3d 1 (D.C. Cir. 2014).  The Department focuses on the "related to" language in its briefings and backs it up with the two new affidavits.

The Department's evidence, contained in the two affidavits of Mr. Kessler and Mr. Naftalis, is sufficient for withholding the Report in full because of the unique breadth of Exemption 8.  The Court's finding above that most, if not all, of the Report is covered by Exemption 8—simply based on the text of the exemption—negates the need for the government to provide an especially comprehensive non-segregability explanation in the Exemption 8 context.  While it is true that the withholding agency has an "obligation to show with 'reasonable specificity' why documents cannot be further segregated," *Ctr. for Pub. Integrity v. U.S. Dep't of Com.*, 401 F. Supp. 3d 108, 116 (D.D.C. 2019) (citations omitted), courts in this district have consistently found comparatively less detail to be sufficient for the non-segregability showing in the context of Exemption 8 than in the context of other FOIA exemptions.  The exemption is

broad, so not as much detail about specific content must be shown.  *Compare Jud. Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 37 (D.D.C. 2011) (discussing segregability in the Exemption 8 context), *and Ball,* 87 F. Supp. 3d at 57–58, *with Ctr. for Pub. Integrity*, 401 F. Supp. 3d at 115–17 (discussing segregability in the context of the much narrower exemptions 3, 4, 5, and 6).  In *Judicial Watch*, for example, the court held that, in light of its breadth, Exemption 8 does not even "require the [agency] to identify a specific report to which the information relates."  796 F. Supp. 2d at 37 ("[A]ffidavits that established the information was obtained through an ongoing supervisory process were sufficient to make [all] withheld information 'related to the examination . . . reports . . . for the use of an agency responsible for the regulation or supervision of financial institutions.'"); *see also McCullough v. FDIC,* No. 79-1132, 1980 U.S. Dist. LEXIS 17685, at *7 (D.D.C. July 28, 1980) ("[T]he legislative history, though limited, strongly implies that all records, regardless of the source, of a bank's financial condition and operations and in the possession of a federal agency 'responsible for the regulation or supervision of financial institutions,' are exempt." (citation omitted)).

　　　Based on the case law's less demanding approach to showing that all information is non-segregable with reasonable specificity in the Exemption 8 context, the Court finds that the Department has satisfied its obligation here.  Though relatively brief and somewhat conclusory, *see* 2d Naftalis Decl. ¶¶ 21, ECF No. 34-4; 2d Kessler Decl. ¶¶ 3–4, ECF No. 34-3, the government's affidavits and filings establish that the Report in its entirety contains exactly the type of information that Exemption 8 exists to protect.  *See* Def.'s Reply at 5, ECF No. 42 ("[T]he entire purpose and function of the Report was to conduct detailed assessment of HSBC's [anti-money laundering] and sanctions compliance program . . . " (quoting 2d Naftalis Decl. ¶ 15, ECF No. 34-4)).  Plaintiffs also assert that it is implausible that withholding background

information or a table of contents would also serve the purposes of Exemption 8, Pls.' Combined Mem. at 3, ECF No. 38-1, but in the FOIA context, the Court must follow the plain meaning of the exemption first, and it is certain that background information or a table of contents is also exempt under the plain meaning of the "related to" language, *see* Def.'s Reply at 4–5, ECF No. 42 ("[T]here is no portion of the Report that does not further or *relate to* the Monitor's purpose of comprehensively assessing HSBC's [anti-money laundering] and sanctions compliance program . . . " (emphasis added)); *Public Investors II*, 930 F. Supp. 2d at 62 ("[T]he 'related to' language casts a wide net of non-disclosure over any documents that are logically connected to an 'examination, operating, or condition report[].'"); *see also Atkinson*, 1980 WL 355660, at *2 (finding that separate documents from the examination report at issue which "represent the foundation of the examination process, the findings of such an examination, or its follow-up" also fall under the "related to" language). Lastly, the Court notes, once again, that "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or '*plausible*,'" and that burden has been met here. *Scudder*, 254 F. Supp. 3d at 140 (citations omitted) (emphasis added).

Furthermore, withholding the Report in its entirety would serve the two purposes of Exemption 8: (1) the protection of financial institutions and (2) the preservation of the relationship between financial institutions and their supervising agencies. *See Consumers Union*, 589 F.2d at 534. The Court found in its previous opinion that those two purposes were served by applying the exemption based on the foreseeable harms both to the bank and to the relationship of the bank and its supervising agency. *See* Mem. Op. at 21–22, ECF No. 25.[5] Disclosure might

---

[5] Plaintiffs argue that the Department has not demonstrated the foreseeable harms that would result from disclosure of the Report, *see* Pls.' Combined Mem. at 2–4, ECF No. 38-1, but this issue was already settled in the last opinion. Mem. Op. at 21–22, ECF No. 25. Though both

undermine public confidence in the bank and undermine the regulatory effectiveness of the Monitor.  *Id.*

Plaintiffs offer one more relevant response to the Department's assertion that Exemption 8 covers the entire Report.  They speculate that the Monitor performed separate functions for the Department's criminal prosecution of the bank and the Federal Reserve's regulation of the bank, and therefore say that "material that was created only for . . . the Justice Department, should be segregated and released under Exemption 8" because the Department is not "an 'agency responsible for the regulation or supervision of financial institutions.'"  Pls.' Combined Mem. at 4 (quoting 5 U.S.C. § 552(b)(8)).  Plaintiffs' speculation that the Monitor performed separate functions for each agency is heavily undermined by the fact that the entire Report was submitted to both the Federal Reserve and the Justice Department, rather than separate components submitted to each, and their argument is therefore unconvincing.  Def.'s Reply at 7, ECF No. 42.

At any rate, even if the Federal Reserve had no interest in information collected by the Monitor for purposes of criminal prosecution by the Justice Department, such information would still fall under Exemption 8 as "*related to* examination . . . reports . . . for the use of an agency responsible for the regulation or supervision of financial institutions."  5 U.S.C. § 552(b)(8) (emphasis added).  As the Court noted in its prior opinion, Plaintiffs fail to appreciate the scope of Exemption 8 and especially the "related to" language.  Mem. Op. at 23, ECF No. 25.  In prior cases, this language has been held broad enough to cover outside written communications merely discussing the document that actually qualifies as an examination report.  *See Williams & Connolly LLP*, 39 F. Supp. 3d at 91.  The agencies' decision to consolidate their action against

---

parties address foreseeable harms again, neither adds anything that would change the Court's prior opinion that the government had demonstrated foreseeable harm.

HSBC and request only one Report that was sent to both the Justice Department and the Federal Reserve strongly indicates that the information collected for one is at least "related to" the information collected for the other, and thus falls within the ambit of Exemption 8.

As shown above, the entire Report could likely be considered an "examination . . . report[] . . . for the use of an agency responsible for the regulation or supervision of financial institutions," 5 U.S.C. § 552(b)(8), but even if all information contained in the Report does not fit this definition so precisely, that information still falls under the "related to" catchall that Congress added to ensure the protection of financial institutions and their relationships with regulators. *Consumers Union*, 589 F.2d at 534. The Department has plausibly demonstrated in its two new affidavits that this is the case, so the Court holds that the entire Report may be withheld under Exemption 8 and that no information contained therein is segregable.

### D.  Exemption 8 Covers the Entire Report Despite Judge Gleeson's Ruling

Plaintiffs contest the Department's position that no portion is segregable based on Judge Gleeson's decision that much of the Report could be released under a First Amendment right-of-access framework. *See* Pls.' Combined Mem. at 2–3, ECF No. 38-1; *HSBC II*, 2016 WL 347670 at *7. Plaintiffs assert that the government has not sufficiently demonstrated that foreseeable harm would result from disclosure of at least some portions of the Report in light of the fact that Judge Gleeson believed certain harms could be sufficiently protected against through redactions. Pls.' Combined Mem. at 2–3, ECF No. 38-1. However, the Court notes again here that "Judge Gleeson did not evaluate the applicability of any FOIA exemptions or make any finding with respect to segregability pursuant to FOIA." Mem. Op. at 23, ECF No. 25. "Thus, Judge Gleeson did not endeavor, for example, to redact information on the basis that it was 'contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of

an agency responsible for the regulation or supervision of financial institutions.'"  Def.'s
Renewed Mot. Summ. J. at 6, ECF No. 34-2 (quoting 5 U.S.C. § 552(b)(8)).  In fact, Judge
Gleeson's approach was fundamentally different from the approach a court must take in a FOIA
case.

 In *HSBC II*, Judge Gleeson ordered release of the Report based on a First Amendment
right of access, rather than a claim made pursuant to FOIA.  Granting a First Amendment right of
access claim lies largely within the discretion of a judge and regards documents that can be
considered "judicial documents."  *See HSBC II*, 2016 WL 347670, at \*2.  There is a presumption
in favor of disclosure of all judicial documents, and "[o]nce a First Amendment right of access
. . . is found, the documents 'may be sealed [only] if specific, on the record findings are made
demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve
that interest.'"  *United States v. Erie County, N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014).  There are
no exemptions explicitly spelled out.  *See id.* (describing the balancing test conducted once a
document is determined to be a judicial document).

 In a FOIA case, the approach is different.  The question is whether the terms of an
exemption apply, and as the Court has explained above, they do.  Because the entire Report is
protected under Exemption 8, release with redactions is not appropriate.  This is especially so
considering that the harms that Judge Gleeson considered in order to redact information were not
as broad as the harms that Exemption 8 seeks to avoid.  *See HSBC II*, 2016 WL 347670, at \*5–
6.

 Judge Gleeson's rejection of some of HSBC's proposed redactions offers a perfect
example of how applying FOIA Exemption 8 would yield a different outcome than the one he
reached.  In *HSBC I*, No. 12-CR-763 (E.D.N.Y. Mar. 9, 2016), ECF No. 70, HSBC had

submitted proposed redactions to the Report because Judge Gleeson had said that he would

redact "commercially sensitive or proprietary business information."  *Id.* at 2.  Judge Gleeson

rejected HSBC's proposal to redact the following paragraph from the Report:

> Developing a strong, deeply ingrained compliance culture is no simple task, and
> poses particular challenges to HSBC Group in light of the depth of the cultural
> deficiencies that fostered the intentional criminal conduct that led to the DPA and
> the size and scope of the Bank's operations.  Although the Bank has taken many
> positive steps during the past year, the fact remains that it has moved too slowly
> and made too little progress toward instilling the type of culture it will need in order
> to build an effective AML and sanctions compliance program—and to maintain
> that program when it is no longer subject to the Monitor's supervision.

*Id.* at 3 (quoting Report at 5).[6]  While Judge Gleeson may have been correct that this paragraph

does not disclose "proprietary business information that could advantage '[c]ommercial

competitors seeking an advantage over rivals,'" *United States v. Amodeo*, 71 F.3d 1044, 1051

(2d Cir. 1995), release of the information in this paragraph would risk the very sort of harm

FOIA Exemption 8 exists to protect against.  Recall that the first purpose of the exemption is to

protect financial institutions by preventing the loss of public confidence.  *See Consumers Union*,

589 F.2d at 534.  Disclosure of the paragraph above could plausibly do just that.  Even though

Judge Gleeson said in a prior opinion that he would redact information that (1) would interfere

with the Monitor's ability to perform his work, (2) would interfere with the government's ability

to use independent monitors in the future, and (3) would harm the independent monitor's

---

[6] This excerpt of the Report appears in the non-sealed, public filing.  Another judge on
the U.S. District Court for the Eastern District of New York reaffirmed that "Judge Gleeson
specifically declined to seal this portion of the Report, and [he] ruled that '*with the exception of
the excerpt quoted above*, the entire Report and Appendix shall remain under seal, and the matter
is stayed, pending appellate review.'"  *United States v. HSBC Bank USA, N.A.*, No. 12-CR-763,
2016 WL 2593925, at *3 (E.D.N.Y. May 4, 2016) (quoting *HSBC I*, No. 12-CR-763 (E.D.N.Y.
Mar. 9, 2016), ECF No. 70, at 3).  To this Court's knowledge, this excerpt remains the only
public portion of the Report.  The Court sees no harm in citing this portion considering that it is
publicly available.

relationships with foreign regulators of financial institutions, *see HSBC II*, 2016 WL 347670, at

\*5–6, he did not impose redactions based on those harms as liberally as Exemption 8 would

require.

## E.  *In Camera* Review

Lastly, Plaintiffs urge the Court to at least conduct an *in camera* review to determine for

itself whether FOIA exemptions apply to the Report.  Pls.' Combined Mem. at 7, ECF No. 38-1.

While FOIA authorizes *in camera* review, courts have "'broad discretion' to decide whether *in

camera* review is necessary to determine whether the government has met its burden."  *Loving v.

Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008).  The government's burden is typically met when

it provides affidavits which describe the document and explain why it falls within the claimed

exemption; "[i]f the affidavits provide specific information sufficient to place the documents

within the exemption category, if this information is not contradicted in the record, and if there is

no evidence in the record of agency bad faith, then summary judgment is appropriate without [*in

camera*] review of the documents."  *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d

1381, 1387 (D.C. Cir. 1979); *see also Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978) ("In

camera inspection requires effort and resources and therefore a court should not resort to it

routinely on the theory that 'it can't hurt.'").  Other cases in this district have identified several

appropriate reasons for conducting *in camera* review: "agency affidavits are insufficiently

detailed to permit meaningful review of exemption claims; the number of records involved is

relatively small; a discrepancy exists between an agency's affidavit and other information that

the agency has publicly disclosed; and when the dispute turns on the contents of the documents,

and not the parties' interpretations of the documents."  *People for the Am. Way Found. v. Nat'l

*Park Serv.*, 503 F. Supp. 2d 284, 307 (D.D.C. 2007) (citation and internal quotation marks omitted).

Plaintiffs argue that Judge Gleeson's contrary ruling casts doubt on the sufficiency of the affidavits submitted by the government, but for the reasons stated above, the Court disagrees with that assertion. To the contrary, the government has met its burden to show that the Report falls within the claimed exemptions. The government has provided sufficient detail in the numerous affidavits it submitted both before and after this Court's previous ruling. *See* 2d Kessler Decl., ECF No. 34-3; 2d Naftalis Decl., ECF No. 34-4. Furthermore, that information is not contradicted anywhere in the record, and there is no indication that the government has acted in bad faith. *See* Pls.' Combined Mem. at 2, ECF No. 38-1 (conceding that Plaintiffs do not challenge the government's assertion that the requisite line-by-line review was conducted). Therefore, the Court declines to conduct an *in camera* review and finds that summary judgment is warranted.

Because the Court finds that Exemption 8 suffices to allow the government to withhold the Report in full, discussion of the parties' remaining arguments regarding other FOIA exemptions is unnecessary.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Renewed Motion for Summary Judgment (ECF No. 34) is hereby **GRANTED**, and Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 38) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 19, 2022                                   RUDOLPH CONTRERAS
                                                            United States District Judge