**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |  |
|---|---|---|---|
| JASON LEOPOLD, | : |  |  |
|  | : |  |  |
| BUZZFEED INC., | : |  |  |
|  | : |  |  |
| Plaintiffs, | : | Civil Action No.: | 19-3192 (RC) |
|  | : |  |  |
| v. | : | Re Document No.: | 54, 56 |
|  | : |  |  |
| DEPARTMENT OF JUSTICE, | : |  |  |
|  | : |  |  |
| Defendant. | : |  |  |

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

On October 24, 2019, Jason Leopold ("Leopold") and Buzzfeed Inc. ("Buzzfeed") (collectively, "Plaintiffs") filed a Freedom of Information Act ("FOIA") suit against the Department of Justice ("DOJ" or "Defendant" or the "Agency"). Currently, the D.C. Circuit has remanded this case for a third round of summary judgment to resolve a remaining issue: whether disclosing a redacted First Annual Follow-Up Review Report and appendices ("Monitor Report") documenting HSBC's[1] compliance with a deferred prosecution agreement ("DPA") would harm the interests protected by FOIA Exemption 8. Defendant argues that the redactions shield certain law enforcement records and that their release would cause harm, while Plaintiffs

---

[1] The Court uses "HSBC" to collectively refer to HSBC Holdings plc, the ultimate parent company, HSBC North America Holdings, Inc., a subsidiary of HSBC Holdings plc, and HSBC Bank USA, a subsidiary of HSBC North America Holdings, Inc.

seek summary judgment to force the disclosure of a redacted version of the Monitor Report. This action has undergone multiple rounds of court rulings. For the reasons stated below, the Court denies Defendant's motion for summary judgment and denies Plaintiffs' cross-motion for summary judgment.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Deferred Prosecution Agreement

In 2012, the U.S. Attorney's Office for the Eastern District of New York and the Money Laundering and Asset Recovery Section of DOJ's Criminal Division, filed a criminal information against HSBC and its subsidiaries, charging them with violations of the Bank Secrecy Act, including failure to maintain an anti-money laundering program and conduct due diligence on foreign correspondent bank accounts.  Declaration of Margaret A. Moeser ("Moeser Decl.") ¶ 12, ECF No. 15-10.  The criminal information also charged HSBC with facilitating financial transactions for sanctioned entities, violating the International Emergency Economic Powers Act and the Trading with the Enemy Act.  *Id*.  Along with the criminal information, the government immediately filed a DPA, a statement of facts, and a corporate compliance monitor agreement, requesting that the court place the prosecution in abeyance for 60 months.  *Id*. ¶ 13. HSBC also reached resolutions with the United Kingdom's Financial Conduct Authority and the Federal Reserve over the same conduct.  *Id*. ¶ 14; Declaration of Richard Naylor ("Naylor Decl.") ¶¶ 12–18, ECF No. 54-5.

As part of the DPA, an independent monitor was appointed to evaluate HSBC's compliance with anti-money laundering and sanctions laws, and to submit progress reports.  *See generally* Moeser Decl.  HSBC committed to "cooperate fully with the Monitor."  Declaration of Stephen Stich Match ("Match Decl.") Ex. 1, Attach. B at B-2, ECF 56-4.  This cooperation

required full transparency, including by "facilitat[ing] the Monitor's access to HSBC Group's documents and resources" and "provid[ing] the Monitor with access to all information, documents, records, facilities and/or employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor under this Agreement." *Id*.  Breach of the agreement would subject HSBC to prosecution.  *See* Match Decl. Ex. 1 at 18–19.  Per the agreement, the Monitor would submit reports to DOJ, including annual follow-up reviews. Match Decl. Ex. 1, Attach. B at B-8, B-10–11.  Those reports were subject only to a limited promise of confidentiality, and DOJ retained the "sole discretion" to publish the reports if it determined that doing so would further "its duties and responsibilities." *Id*. at B-11.

### B. The Monitor Report

Judge John Gleeson of the U.S. District Court for the Eastern District of New York, who approved the DPA and oversaw the initial action, ordered DOJ to file quarterly reports about its implementation.  *United States v. HSBC Bank USA, N.A.,* No. 12-cr-763, 2016 WL 347670, at *1 (E.D.N.Y. Jan. 28, 2016) ("*HSBC* I"), *rev'd*, 863 F.3d 125 (2d Cir. 2017) ("*HSBC* II").  In January 2015, the Monitor issued his first report to HSBC, DOJ, the United Kingdom's Financial Conduct Authority, and the Federal Reserve.  Moeser Decl. ¶ 15.  Judge Gleeson ordered the government to file the Monitor's Report in June 2015, but initially kept it under seal due to requests from both the government and HSBC.  *Id*.  A third party moved to unseal the Monitor Report, and the district court ruled that a redacted version of the Monitor Report could be unsealed, balancing public access with concerns about future law enforcement efforts. Declaration of David K. Kessler ("1st Kessler Decl.") ¶ 4, ECF No. 15-7.  The U.S. Court of Appeals for the Second Circuit later reversed the decision, ruling that the district court had erred in ordering some of the report to be unsealed.  Declaration of Michael P. Grady ("Grady Decl.")

¶ 17, ECF No. 54-4; *HSBC* II, 863 F.3d 125, 129.  The Second Circuit concluded that the Monitor Report was not a judicial document and noted concerns that its public disclosure could harm law enforcement efforts.  *HSBC* II, 863 F.3d at 132, 139.  It also noted that members of the public could request the Monitor Report under FOIA, and "offer[ed] no view on whether any of FOIA's exemptions would apply." *Id*. at 142 n.7.

### C.  The FOIA Request and Prior Proceedings

In August 2019, Leopold sent the Executive Office for U.S. Attorneys ("EOUSA") a request for a copy of the Monitor's Report, which the EOUSA initially withheld based on FOIA exemptions 4, 6, 7(A), 7(C), 7(D), and 8.  Declaration of Vinay J. Jolly ("Jolly Decl.") ¶¶ 1, 4, ECF No. 15-3; Joint Status Rep., ECF No. 52.  The parties filed cross-motions for summary judgment, and the Court found that Exemption 8 applied to the Monitor Report in full.  Mem. Op. at 20, ECF No. 25.  Nonetheless, the Court denied Defendant's summary judgment, as it was not satisfied that all reasonably segregable material had been released.  *Id*. at 22–24.  After DOJ conducted a line-by-line review and determined that no portion was reasonably segregable, the parties then filed a second round of summary judgment motions.  This Court granted Defendant's motion for summary judgment and denied Plaintiff's cross-motion for summary judgment because it found that "Exemption 8 suffices to allow the government to withhold the [Monitor] Report in full," though it did not ultimately determine whether Exemption 4 or any other exemptions also applied.  Mem. Op. at 24, ECF No. 47.  Plaintiffs appealed the district court's decision.

On March 1, 2024, the D.C. Circuit vacated the summary judgment granted to the Defendant and remanded for further proceedings, instructing DOJ to provide a more detailed justification for withholding the Monitor Report.  *Leopold v. Dep't of Just.*, 94 F.4th 33, 38–39

(D.C. Cir. 2024). Specifically, DOJ was required to explain how the release of any portion of the Monitor Report could foreseeably harm an interest protected by Exemption 8. *Id*. The court emphasized the need for a "sequential inquiry," in which DOJ must first demonstrate that an exemption applies to the record, then show how disclosing specific portions could foreseeably harm an interest protected by that exemption, while also considering whether partial disclosure is possible. *Id*. at 37–38. This process ensures that agencies do not overuse exemptions and remain transparent about the harms justifying withholding information. *Id*. at 37. The circuit court found that the district court's ruling, which held that Exemption 8 covered the entire Monitor Report, was insufficient because it failed to adequately assess whether portions of the Monitor Report could be disclosed without harm. *Id*. It also rejected DOJ's reliance on vague and conclusory declarations. *Id*. at 38. As the circuit court pointed out, the foreseeable harm requirement imposes a "meaningful burden on agencies" to provide concrete evidence to justify withholding any part of the Monitor Report. *Id*. at 37.

### III.  LEGAL STANDARDS

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). Accordingly, FOIA "mandates release of properly requested federal agency records unless the materials fall squarely within one of nine statutory exemptions." *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (citing *Milner v. Dep't of Navy,* 562 U.S. 562, 565 (2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001)). "Because disclosure rather than secrecy is the dominant objective of

the Act, the statutory exemptions are narrowly construed." *Elec. Priv. Info. Ctr. v. U.S. Drug Enf't Agency*, 192 F. Supp. 3d 92, 101 (D.D.C. 2016) (cleaned up).

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Def. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (citing 5 U.S.C. § 552(a)(4)(B)). To satisfy its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply." *Elec. Priv. Info. Ctr.*, 192 F. Supp. 3d at 103 (citing *Mead Data Central v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). "This burden does not shift even when the requester files a cross-motion for summary judgment because the Government ultimately has the onus of proving that the documents are exempt from disclosure, while the burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 99 (D.D.C. 2019) (cleaned up). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

## IV.  ANALYSIS

The D.C. Circuit's opinion emphasized that, on remand, DOJ must explain how harm would result from disclosing each portion of the Monitor's Report and address Judge Gleeson's findings regarding redactions. *Leopold v. Dep't of Just.*, 94 F.4th at 38.  Following the D.C. Circuit's decision, the parties confirmed that Plaintiffs seek only the Monitor Report as redacted by Judge Gleeson – and not the Monitor Report in full – and they agreed to a briefing schedule. Jt. Status Rep., ECF No. 52 ¶ 1.  Through the summary judgment briefing, the parties agree that Plaintiffs have met their burden to establish their continued standing.  *See* Combined Opp'n to Pls.' Cross-Mot. for Summ. J. & Reply in Further Support of Def.'s Mot. for Summ. J. ("Def.'s Cross-MSJ Opp'n") at 18–19, ECF No. 58.  The parties are also in agreement that "Exemption 8 covers the Monitor Report in its entirety." *Id*. at 19.  Accordingly, the remaining issues to be resolved by this Court are whether DOJ has satisfied the foreseeable harm requirement with respect to the report's disclosure, whether further redactions or *in camera* review can address the concerns, and whether these factors justify withholding the redacted Monitor Report.

### A.  Harm from Disclosure (Exemption 8)

DOJ contends that the supplemental declarations included with its motion for summary judgment offer a detailed description of the harm it anticipates from disclosing any portion of the Monitor Report. *See* Def.'s Cross-MSJ Opp'n at 16–28.  It argues that the harm from disclosure is reasonably foreseeable to the prosecution of other financial institutions, it impairs banking regulators' ability to carry out their responsibilities to supervise banking organizations, and it threatens the security of HSBC and other financial institutions. *Id*. at 19–39.  Plaintiffs argue that DOJ bears an independent and meaningful burden to show that disclosing any portion of the Monitor Report would harm an interest protected by Exemption 8 and that DOJ's evidence is

insufficient.  Pls.' Third Cross-Mot. Summ. J ("Pls.' Cross-MSJ") at 15–26, ECF No. 56.  They argue that their evidence creates a dispute of material fact, thereby precluding summary judgment for DOJ.  *Id*. at 12–15.

Exemption 8 of the FOIA protects from disclosure materials that are "contained in or related to examination, operating, or condition reports" prepared by or for agencies that regulate or supervise financial institutions.  5 U.S.C. § 552(b)(8).  This circuit has emphasized that while FOIA exemptions should be narrowly interpreted, Congress intentionally crafted Exemption 8 with a broad, all-inclusive definition.  *Consumers Union of U.S., Inc. v. Heimann*, 589 F.2d 531, 534 (D.C. Cir. 1978)).  Many courts have recognized the broad scope of Exemption 8, including this Court.  *Atkinson v. FDIC, No. 79-1113*, 1980 WL 355660, at *2 (D.D.C. Feb. 13, 1980).  This broad scope extends to documents that are "related to" examination reports, making them also exempt from disclosure.  *Atkinson*, 1980 WL 355660 at *1.  Documents that "represent the foundation of the examination process, the findings of such an examination, or its follow-up" fall under the exemption.  *Atkinson*, 1980 WL 355660 at *1; *Williams & Connolly LLP v. Off. of the Comptroller of the Currency*, 39 F. Supp. 3d 82, 91 (D.D.C. 2014)).  Congress created Exemption 8 with two main purposes: (1) to protect financial institutions and (2) to preserve the relationship between financial institutions and their supervising agencies.  *Consumers Union*, 589 F.2d at 534.  The first purpose aims to prevent the release of examination reports, which could undermine public confidence and cause "unwarranted runs on banks."  *Id*.  The second purpose seeks to maintain the full cooperation of financial institutions by ensuring that sensitive information shared with their supervising agencies remains confidential.  *Id*.

1. Foreseeable Harm Requirement

Whether a record falls within an exemption and whether nondisclosure of that record is permissible under the FOIA Improvement Act's foreseeable harm standard are "distinct, consecutive inquiries." Pub. L. No. 114-185, 130 Stat. 538 (2016); *see also Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024). This Court previously held that the Monitor Report may be withheld under Exemption 8, as it qualifies it as an "examination report" related to the regulation of financial institutions. Mem. Op. at 13–20, ECF No. 47. The parties are now in agreement about this conclusion. However, "pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018), *on reconsideration in part*, 442 F. Supp. 3d 240 (D.D.C. 2020); *see also Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019).

DOJ argues that the disclosure of the Monitor Report would cause foreseeable harm, specifically regarding the security and integrity of financial institutions. *See* Def.'s Cross-MSJ Opp'n at 19–39. It identifies three harms: impairing financial crime prosecutions, hindering banking regulation, and threatening institutional security, all of which fall under Exemption 8's protections. *Id.* It also contends that the harm to prosecutions and deferred prosecutions of financial institutions, such as HSBC, is crucial to maintaining financial security and integrity. *Id.* at 23–29. It explains that these concerns align with Exemption 8's intent to safeguard both individual financial institutions and the broader industry. *Id.* at 22; *see generally Gregory v. FDIC*, 631 F.2d 896 (D.C. Cir. 1980); *Consumers Union of U.S., Inc. v. Heimann*, 589 F.2d 531 (D.C. Cir. 1978). In contrast, Plaintiffs argue that DOJ's position contradicts FOIA's mandate

for *de novo* court review. Pls.' Reply in Supp. of Their Third Cross-Mot. for Summ. J. "Pls.' Cross-MSJ Reply") at 4, ECF No. 60. Although DOJ criticizes Plaintiffs for failing to provide affirmative evidence disputing its harm claims, Plaintiffs maintain that they have presented adequate evidence and that it is ultimately the Court's responsibility to independently assess the existence of harm. *Id.* Accordingly, the Court will assess whether it can grant summary judgment to either party based on the current record alone.

### a. Harm to the Prosecution of Financial Institutions

DOJ argues that disclosing the Monitor Report would harm the prosecution of financial institutions for crimes by undermining the confidentiality of DPAs, which are essential for obtaining cooperation from banks and their employees. Grady Decl. ¶¶ 22, 27. DOJ, supported by declarations from the Federal Reserve, the UK Regulator, and HSBC, asserts that disclosure would discourage financial institutions from entering into DPAs, hinder regulatory cooperation, and discourage candid communication about compliance deficiencies. *Id*. ¶¶ 23, 25. DOJ maintains that the potential harm to future enforcement and financial stability is reasonable, given the significant reliance on confidentiality in regulatory oversight. Naylor Decl. ¶¶ 26, 27; Declaration of Emad Aladhal ("Aladhal Decl.") ¶ 31, ECF No. 58-2. It also emphasizes that protecting these assurances is crucial to maintaining effective oversight and preventing future financial crimes. Naylor Decl. ¶¶ 26, 27. Plaintiffs dispute these claims by arguing that Exemption 8 does not apply to protect prosecutions or deferred prosecutions, *see Consumers Union*, 589 F.2d at 534; and even if Exemption 8 applied, DOJ has failed to demonstrate that disclosure would harm the prosecution, especially because the redacted information is non-sensitive. Pls.' Cross-MSJ at 17–20. Plaintiffs further argue that restricting disclosure to the less sensitive sections of the Monitor Report will not harm future DPAs or financial institutions. *Id*.

at 19–20.  They emphasize that the case concerns a bank that is already aware of its criminal conduct and has no leverage to refuse a DPA.  *Id*. at 18.

As previously held by this Court, Exemption 8 applies to the Monitor Report because it protects "examination, operating, or condition reports" prepared by agencies that regulate financial institutions.  Mem. Op. at 18–22, ECF No. 25.  The Monitor Report was prepared for the Federal Reserve, an agency responsible for regulating financial institutions, and it provides a detailed assessment of HSBC's compliance with anti-money laundering and sanctions regulations.  *Id*. at 19–20.  The Court found, and it continues to agree here, that the Monitor Report is either directly "contained in" or "related to" such examination reports, and the broad scope of Exemption 8 covers all information in the report.  *Id*. at 18–20.  The Court also found that, though Judge Gleeson's First Amendment analysis focused on judicial documents and could allow for redactions based on narrower harms, the same approach is not taken when deciding whether withholding is appropriate under FOIA.  *Id*. at 20–22.  As such, Exemption 8's broader protections against disclosure of information related to financial institutions apply.  *Id*.

## B.  *In Camera* Review

Plaintiffs argue that the Court should resolve any dispute of fact through *in camera* review of Judge Gleeson's redactions.  They assert that such review provides a preferable method of resolving this case over the Court conducting a bench trial, which Plaintiffs believe would be complicated by the potential testimony of a retired federal judge.  Pls.' Cross-MSJ at 34–35.  In contrast, DOJ opposes *in camera* review, arguing that it would be inappropriate here.  Def.'s Cross-MSJ Opp'n at 40–43.  DOJ further contends that *in camera* review is typically used to address gaps in agency declarations, not to replace a bench trial.  *Id* at 41–42.  Defendant also

argues that its declarations sufficiently justify withholding the Monitor Report under Exemption 8 and demonstrate the potential harm of disclosure. *Id.* at 40–43.

FOIA allows for *in camera* review, but courts have "broad discretion" in deciding whether it is necessary to determine if the government has met its burden. *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (quoting *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 577–78 (D.C. Cir. 1996)). The government typically meets its burden by providing declarations that describe the document and explain why it falls under the claimed exemption. *Id*. If the declarations provide specific, uncontested information placing the documents within the exemption and there is no evidence of agency bad faith, then summary judgment is appropriate without *in camera* review. *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979); *see also Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). Courts should not routinely resort to *in camera* inspection, as it requires significant resources. *Ray*, 587 F.2d at 1195; *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 307 (D.D.C. 2007). However, *in camera* review may be appropriate in certain cases, such as when agency declarations lack sufficient detail, when the number of records is small, when discrepancies exist between an agency's declarations and other public information, or when there are concerns over the contents of the documents themselves.

DOJ notes that the D.C. Circuit has implied in prior cases that courts should avoid *in camera* review for voluminous documents like the Monitor Report. *See Juarez v. Dep't of Just.*, 518 F.3d 54, 60 (D.C. Cir. 2008) ("[D]ue to the minimal length of the documents involved, we agree with appellant that the district court would not have abused its discretion had it chosen to review the documents *in camera*."). Additionally, it asserts that Plaintiffs have failed to provide admissible evidence to challenge their claims of foreseeable harm from disclosure. Def.'s Cross-

MSJ Opp'n at 41. Considering Plaintiff's response to that assertion, the Court disagrees. *See* Pls.' Cross-MSJ Reply at 19–22. Although the Court acknowledges that DOJ has provided abundant evidence that disclosing any portion of the Monitor Report would result in foreseeable harm and it is not contemplating discovery or a bench trial, the Court also finds that it will gain important context and better understanding of the issues at play if it reviews Judge Gleeson's redactions itself. The Court reaches this conclusion by considering the following: Judge Gleeson found no harm in disclosing a redacted version of the Monitor Report, indicating that much of the information was either generalized or non-sensitive; the Monitor's own conclusion suggested that a redacted version could be released without damaging DOJ's interest; and DOJ's previous public filings disclosed potentially similar information without objection, suggesting that portions of the Monitor Report might be similarly released with minimal risk of harm.

Courts have recognized that *in camera* review can be helpful when there is a need to assess whether the agency's declarations or the veracity of claims about potential harm are sufficient to withhold the records. *Dickstein Shapiro LLP v. Dep't of Defense*, 730 F. Supp. 2d 6, 10 (D.D.C. 2010); *Lam Lek Chong v. U.S. Drug Enf't Admin.*, 929 F.2d 729, 729 (D.C. Cir. 1991); *Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 392–393 (D.C. Cir. 1987); *Meeropol v. Meese,* 790 F.2d 942, 958 (D.C. Cir. 1986); *Lesar v. U.S. Dep't of Just.,* 636 F.2d 472, 481 (D.C. Cir. 1980). Thus, *in camera* review remains an essential tool in resolving complex FOIA disputes involving sensitive government documents. Therefore, the Court is within its discretion to use *in camera* review to determine whether portions of the redacted Monitor Report should be disclosed in light of the arguments presented by the parties. Accordingly, the Court holds that, within thirty days of this opinion, DOJ must submit the redacted Monitor Report for *in camera* review. *See Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 49 (D.D.C. 2019) ("Where the agencies

have fallen short, the Court concludes that summary judgment in neither side's favor is appropriate at this juncture.  The Court instead orders that the agencies produce the documents at issue for *in camera* review[.]").  The submission to be made must allow the Court, through shading or otherwise, to see the actual redactions made by Judge Gleeson in order to compare the type of information he redacted with that he found suitable to disclose.  After reviewing the submission, the Court will then make its determination on whether all or part of the redacted Monitor Report must be produced pursuant to the FOIA.

## V.  CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for summary judgment and Plaintiffs' cross-motion for summary judgment.  Within 30 days of this opinion and order, Defendant shall submit the redacted Monitor Report for *in camera* review.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 20, 2025                                                          RUDOLPH CONTRERAS

                                                                                                     United States District Judge